**UNITED STATES of America, Plaintiff-Appellee,**

v.

**Miles DEARDEN, Jr., Alex Goldstein and Leonard Nikoloric, Defendants-Appellants.**

No. 75–3362.

United States Court of Appeals, Fifth Circuit.

Feb. 3, 1977.

Rehearing and Rehearing En Banc Denied March 17, 1977.

Theodore Klein (Court-appointed), Miami, Fla., for Dearden.

Ronald I. Strauss, Arnold R. Ginsberg, Highsmith, Strauss & Nelson, Miami, Fla., for Goldstein.

Barry L. Garber (Court-appointed), Miami, Fla., Robert L. Guthrie, Dallas, Tex., for Nikoloric.

Robert W. Rust, U. S. Atty., Charles O. Farrar, Asst. U. S. Atty., Miami, Fla., Morris Silverstein, Nash W. Schott, Atty., Dept. of Justice, Crim. Div., Washington, D.C., for plaintiff-appellee.

Before GEWIN, GEE and FAY, Circuit Judges.

GEE, Circuit Judge:

In late 1968, several businessmen not indicted in this case formed a sham offshore mutual fund called the First Liberty Fund; First Liberty was virtually valueless. Investments in First Liberty were guaranteed by Transcontinental Insurance Company, which was also a sham. In 1970, these businessmen engaged a German sales organization (NUSI) to sell First Liberty shares to German investors, who purchased $1.8 million worth of shares between July 1970 and February 1, 1971. Alex Goldstein was a partner in the German sales organization NUSI (his co-partners, Jurgen and Volker Reible, two German brothers, were indicted but remained in Germany beyond the jurisdiction of the trial court). Miles Dearden, Jr. bought out the originators of the First Liberty Fund and with his father became managing partner of the fund.[1] Leonard Nikoloric was a Washington, D.C. lawyer who initially became associated with First Liberty in an effort to provide financing for his own financially distressed lumber company. He was later engaged by Dearden to manage the financial affairs of First Liberty.

All three appellants were convicted of conspiracy to transport money obtained by fraud, in violation of 18 U.S.C. § 371. Dearden was also convicted on twelve substantive charges and Nikoloric on seven, of violating 18 U.S.C. §§ 1341, 1343, 2314. Goldstein received a two-year sentence on his conspiracy count; Dearden and Nikoloric received five-year sentences for conspiracy and concurrent two-year sentences for the substantive offenses.

## GOLDSTEIN

I. *Sufficiency of the evidence.* Before a defendant can be convicted of conspiracy, the government must prove that he both had knowledge of the conspiracy and acted with an intent to further its objectives. *United States v. Miller,* 500 F.2d 751 (5th Cir. 1974). Appellant Goldstein admitted that a conspiracy existed but denied knowledge of the conspiracy and denied acting with an intent to further its objectives. He portrayed himself as an innocent businessman who was also taken in by this fraud and complains on appeal of insufficient evidence connecting him to the conspiracy. The test in such a case is whether there was sufficient evidence to go to the jury. If there was, we then apply the *Glasser v. United States* test of whether there was "substantial evidence taking the view most favorable to the government" to support the jury's verdict. 315 U.S. 60, 80, 62 S.Ct. 457, 86 L.Ed. 680 (1942).

█ Because defendant Goldstein admitted its existence, only slight evidence was needed to connect him with the established conspiracy. *United States v. Wayman,* 510 F.2d 1020, 1026 (5th Cir. 1975). Clearly, there was sufficient evidence to send this question to the jury, and applying the *Glasser* test, we find substantial evidence to support the jury's verdict. There is no merit in appellant's argument that he could not be convicted of conspiracy when he was acquitted on all substantive counts:

> If there be an agreement or confederation between two or more persons to commit an unlawful act and one or more acts are done by one or more of the coconspirators, it is immaterial whether the substantive offense is or is not consummated.

*United States v. Jacobs,* 451 F.2d 530, 540 (5th Cir. 1971), *cert. denied,* 405 U.S. 955, 92 S.Ct. 1170, 31 L.Ed.2d 231 (1972).

█ II. *Denial of the motion to sever.* Discretion on granting the motion to sever is firmly committed to the trial court. The test set forth in *Tillman v. United States* is stated as follows:

> "[C]an the jury keep separate the evidence that is relevant to each defendant and render a fair and impartial verdict as to him? If so, though the task be difficult, severance should not be granted."

406 F.2d 930, 935 (5th Cir. 1969), *citing Peterson v. United States,* 344 F.2d 419, 422 (5th Cir. 1965). Goldstein complains of be-

---

1. Miles Dearden, Sr. was convicted on numerous counts from which he does not here appeal.

ing convicted through guilt by association with fraudulent scheming that occurred prior to his association with First Liberty. But once a defendant is connected with a conspiracy he is responsible for acts of the conspiracy occurring before or after his association. *United States v. Reynolds,* 511 F.2d 603 (5th Cir. 1975); *United States v. Brasseaux,* 509 F.2d 157 (5th Cir. 1975); *Nelson v. United States,* 415 F.2d 483 (5th Cir. 1969), *cert. denied,* 396 U.S. 1060, 90 S.Ct. 751, 24 L.Ed.2d 754 (1970). Nor does the admission of the misdeeds of earlier co-conspirators mandate a severance for this appellant. *United States v. Perez,* 489 F.2d 51, 67 (5th Cir. 1973). Goldstein has not alleged the kind of compelling prejudice that would cause this court to overturn the trial judge's denial of his motion to sever.

III. *Deposition of foreign witnesses.* Federal Rule of Criminal Procedure 15(a) reads as follows:

> Whenever due to exceptional circumstances of the case it is in the interest of justice that the testimony of a prospective witness of a party be taken and preserved for use at trial, the court may upon motion of such party and notice to the parties order that testimony of such witness be taken by deposition and that any designated book, paper, document, record, recording, or other material not privileged, be produced at the same time and place.

In *Heflin v. United States,* 223 F.2d 371 (5th Cir. 1955), we held that a Rule 15

motion made five days *prior* to trial was properly denied for inexcusable delay.[2] Appellant's motion came three weeks into trial, after the government had completed its case-in-chief. We hold that the trial court did not abuse its discretion when it denied Goldstein's Rule 15 motion because of unexcused delay.

IV. *Comments on appellant's failure to testify.* The comments complained of are set forth in the margin.[3] The Fifth Circuit test to determine if there has been a comment on the failure of a defendant to testify is whether or not the statement was manifestly intended or was of such a character that a jury would naturally and necessarily take it to be a comment on the failure of the accused to testify. *United States v. White,* 444 F.2d 1274 (5th Cir.), *cert. denied,* 404 U.S. 949, 92 S.Ct. 300, 30 L.Ed.2d 266 (1971). A comment on the failure of the *defense,* as opposed to the *defendant,* to counter or explain the testimony presented or evidence introduced is not an infringement of the defendant's fifth amendment privilege. *See United States v. Hill,* 508 F.2d 345 (5th Cir. 1975). We conclude that all of the comments complained of here fall in the category of comments on the failure of the defense rather than comments on the failure of appellant Goldstein to testify.[4] The court instructed the jury that it could not consider appellant's failure to testify, and we find no prejudice to appellant requiring reversal of his conviction.

---

**2.** *See* also *United States v. Whiting,* 308 F.2d 537 (2d Cir. 1962) (holding that a Rule 15 motion filed on the first day of trial was properly denied for unexcusable delay); *United States v. Broker,* 246 F.2d 328 (2d Cir.), *cert. denied,* 355 U.S. 837, 78 S.Ct. 63, 2 L.Ed.2d 49 (1957) (holding that a motion filed on the eve of trial may be denied for unexcused delay).

**3.** Did Goldstein say, hey, stop, no more sales? Did he say "Lets freeze the money, all money coming in and hold it for the benefit of the First Liberty Fund share holders?" No, he did not do that.

. . . Mr. Goldstein is trying to say that he is so naive . . . .

Now, what did Mr. Goldstein and the others do. Well, they didn't tell Reigler.

Mr. Goldstein met with Mr. Mattauch before the Frankfort meeting. He never told Mr. Mattauch about First Liberty being a fraud. They never told anyone, ladies and gentlemen.

There is no evidence in this case, one way or the other, as to who had the power to sign the checks on the NUSI account at the Swiss bank corporation, and there is no evidence in this case one way or another as to what happened to that money that was in that account.

**4.** For a comparison of another argument held not to violate a defendant's fifth amendment privilege, *see United States v. Wilson,* 500 F.2d 715, 721 (5th Cir. 1974).

Appellant Goldstein's additional complaint that the government violated one of the stipulations of fact in its closing argument is without merit, and the conviction as to him is AFFIRMED.

## NIKOLORIC

 Appellant Nikoloric complains of a variance between the single conspiracy charged, a conspiracy to defraud German investors by selling fraudulent First Liberty shares, and the multiple conspiracies proved by introducing evidence of the prior schemes of co-conspirators Axlerod and Wilson.[5] But the government never proved any elements of other conspiracies involving Axlerod and Wilson, who had pled guilty to other charges and were witnesses for the prosecution rather than co-defendants in this trial. We find no merit in appellant's assertion of a variance, concluding that what Nikoloric is actually complaining of is the revelation of prior misconduct of his co-conspirators. The testimony regarding the fraudulent Bank of Sark, which was alleged to hold the assets of First Liberty, is probative of the existence of a conspiracy.

Taking a slightly different slant, Nikoloric complains that because of the possibility of a transference of guilt from Axlerod and Wilson and their admitted schemes, his motion to sever should have been granted. But these co-conspirators, who were not co-defendants, would have been as available to testify for the prosecution in a separate trial involving only appellant Nikoloric. For this reason, and because we find no abuse of discretion in the trial court's denial of Nikoloric's motion to sever, we overrule this rephrased complaint.

Finally, we find no merit in appellant's argument that as trustee for First Liberty he is absolved from all criminal responsibility. Nikoloric's conviction is AFFIRMED.

**5.** Jack Axlerod and Phillip Wilson were among the originators of the First Liberty Fund. But their financial scheming antedated First Liberty; while testifying for the prosecution they claimed credit for establishing the now infamous Bank of Sark, a fraudulent bank located in the Guernsey Islands, and elaborated on their many other schemes to defraud.

## DEARDEN

Appellant Dearden's sole claim on appeal is that his appointed counsel was not furnished with a complete set of documentary evidence. The cost of copying the documentary evidence was estimated to be $1,500, and the court requested that counsel for appellant specify which documents he needed in order to cut down on the cost of copying the entire set of exhibits. Counsel never responded with a request for specific documents. Appellant's father's counsel made a copy of the exhibit documents available, as did the United States Attorney's office, but Dearden's counsel complains that it was inconvenient to travel the eight miles from his office to co-counsel's office or the United States Attorney's office and that his failure to own a set of documentary evidence severely handicapped his ability to defend his client. We cannot agree that counsel's inconvenience rises to the level of a due process violation. We AFFIRM appellant Dearden's conviction.