**UNITED STATES of America, Plaintiff-Appellee,**

v.

**Alonza ELLIS, Fred Crawford, and Benjamin Jordan, Defendants-Appellants.**

**No. 82–7271.**

United States Court of Appeals, Eleventh Circuit.

July 11, 1983.

---

\* Honorable Seybourn H. Lynne, U.S. District Judge for the Northern District of Alabama, sitting by designation.

1. As here pertinent, 18 U.S.C. § 1341, captioned Frauds and Swindles, provides:

    Whoever, having devised or intending to devise any scheme or artifice to defraud, ... for the purpose of executing such scheme or artifice or attempting so to do, places in any post office or authorized depository for mail matter, any matter or thing whatever to be sent or delivered by the Postal Service, ... shall be fined not more than $1,000 or imprisoned not more than five years, or both.

W. Troy Massey, Montgomery, Ala., for Jordan.

Solomon S. Seay, Jr., Montgomery, Ala., for Crawford.

Donald V. Watkins, Montgomery, Ala., for defendants-appellants.

D. Broward Segrest, Asst. U.S. Atty., Montgomery, Ala., for plaintiff-appellee.

Before KRAVITCH and JOHNSON, Circuit Judges, and LYNNE\*, District Judge.

LYNNE, District Judge:

Tried jointly under a thirty-six count indictment charging violations of the mail fraud statute, 18 U.S.C. § 1341,[1] each appellant, his motion for severance having been overruled, was convicted under a single count in which he alone was named. This appeal followed. Concluding that there was a misjoinder of defendants, Rule 8(b), Federal Rules of Criminal Procedure,[2] we reverse.

2. Rule 8(b), Federal Rules of Criminal Procedure, reads:

    Joinder of Defendants. Two or more defendants may be charged in the same indictment or information if they are alleged to have participated in the same act or transaction or in the same series of acts or transactions constituting an offense or offenses. Such defendants may be charged in one or more counts together or separately and all of the defendants need not be charged in each count.

To demonstrate the basis for our conclusion, we severely capsulate the record evidence and reasonable inferences viewed in a light most favorable to the Government, *Glasser v. United States,* 315 U.S. 60, 80, 62 S.Ct. 457, 469, 86 L.Ed. 680 (1942).

In each of the years included in the indictment, appellants were County Commissioners of Bullock County,[3] Alabama. Within his budgetary allowance each commissioner was authorized to requisition materials for performing work in his district. Each month he would check and verify the invoices mailed to the county for his purchases. When the commission as a whole approved the invoices, a check was mailed to the supplier.

In each of such years, Dixie Concrete Pipe Company, Inc., of Tuskegee, Alabama, was the low and successful bidder for supplying concrete pipe in various dimensions to Bullock County. Dixie Pipe was a closely held corporation, of which Clayton C. Venable (Clayton) was President; his son, Clayton Kim Venable (Kim) was Vice-President, and Dan Forbus (Forbus) was a salesman. For a number of years Clayton had followed a practice of tendering to the commissioner who ordered pipe ten percent of the invoice price when payment by the county was received by Dixie Pipe.

The scheme confected by Clayton was simple and unvarying. As payments were received from the county, he would draw a check on the corporation's bank account ostensibly payable to the salesman as a commission in the amount of ten percent of each invoice; direct the salesman to cash the check and deliver the proceeds to him; place the cash in an envelope bearing the number of the ordering commissioner's district and have the envelope hand delivered to such commissioner by the salesman.

The scenario is bizarre. Although at all relevent times Bullock County was Dixie Pipe's captive market, there is no evidence that it sustained economic damage; no evidence that the pipe was defective; no evidence that more pipe was ordered than needed; no evidence that all of the pipe was not devoted to the maintenance of county roads; no evidence that concrete pipe was arbitrarily preferred to metal pipe, and no evidence that the county paid in excess of Dixie Pipe's low bid price. And yet, as found by the jury, the three kickbacks involving the two invoices of September 28, 1978, and the September 27, 1978, invoice were offered by Dixie Pipe[4] and accepted by the respective commissioners as bribes.[5]

A short-handed rendition of the Government's theory is that Dixie Pipe devised a scheme to defraud the citizens of Bullock County, Alabama, of honest public service within the intendment of the mail fraud statute (R.Vol. II, pp. 131–32)[6] and that appellants knowingly entered a conspiracy to effectuate such scheme. To paraphrase

3. Benjamin Jordan was County Commissioner, District 1, Bullock County, Alabama; Fred Crawford, District 3, and Alonza Ellis, District 4.

4. Clayton explained to Forbus that he had always given ten percent to the Commissioners "to get them to buy pipe." (R. Vol. III, pp. 223–24). His motive for giving kickbacks to Bullock County Commissioners is unclear. One may speculate that he feared that in the absence of kickbacks they would devote the funds in their Spartan budget to work for which concrete pipe was not required or to the purchase of metal pipe sold by a competitor. At any rate when Kim engaged in heated arguments with his father (R. Vol. III, p. 338) about the necessity of kickbacks when Dixie Pipe was the low bidder, he was sternly rebuffed by his father without explanation.

5. On one occasion, Alonza Ellis requested Kim to increase his kickback to fifteen percent (R. Vol. III, p. 337). Probative of appellants' understanding of the purpose of the kickbacks which they retained was the action of Commissioner John Will Walters of District 2, who, when he discovered that the envelope delivered to him by Forbus contained money, returned it to Clayton with the statement that he didn't do business that way. (R. Vol. III, pp. 218–22).

6. The Government's theory finds support in cases construing the "any scheme or artifice to defraud" clause of the Mail Fraud Statute. *See, e.g., Shushan v. United States,* 117 F.2d 110 (5th Cir.1941); *United States v. Mandel,* 591 F.2d 1347 (4th Cir.1979); *United States v. Keane,* 522 F.2d 534 (7th Cir.1975), and *United States v. States,* 488 F.2d 761 (8th Cir.1973).

Judge Fay's opinion for the Court in *United States v. Nettles,* 570 F.2d 547, 551 (5th Cir.1978), if the evidence showed one large conspiracy with Dixie Pipe as the hub, the three appellants as the spokes, and some interaction between the bribes to provide the rim, then the defendants could have been joined in one indictment. However, "for a wheel conspiracy to exist, those people who form the wheel's spokes must have been aware and must do something in furtherance of some single, illegal enterprise. If not, there is no rim to enclose the spokes." *United States v. Levine,* 546 F.2d 658, 663 (5th Cir.1977).

We have combed the record for a shred of evidence from which an inference may be drawn that either appellant was aware that the others were accepting bribes and have found none. Beyond peradventure, the record reveals that appellants did not "participate in the same act or transaction or the same series of acts or transactions constituting an offense or offenses." The record evidence discloses three conspiracies and not one.[7]

The joinder of appellants in the same indictment was "inherently prejudicial" and is "completely reviewable on appeal." *United States v. Marionneaux,* 514 F.2d 1244, 1248 (5th Cir.1975).

REVERSED AND REMANDED.

---

**7.** *Kotteakos v. United States,* 328 U.S. 750, 66    S.Ct. 1239, 90 L.Ed. 1557 (1946).