**UNITED STATES of America,**
**Plaintiff–Appellee,**

v.

**Dillard Earl WATSON,**
**Defendant–Appellant.**

No. 87–3548.

United States Court of Appeals,
Eleventh Circuit.

Feb. 21, 1989.

Clyde Taylor, Tallahassee, Fla., for defendant-appellant.

Michael T. Simpson, Asst. U.S. Atty., Tallahassee, Fla., for plaintiff-appellee.

Before VANCE and CLARK, Circuit Judges, and NESBITT\*, District Judge.

VANCE, Circuit Judge:

Dillard Earl Watson appeals his conviction on a five count indictment. Count one charged Watson with importing marijuana into the United States from a place outside the United States, 21 U.S.C. § 952; count two with possession with intent to distribute marijuana, 21 U.S.C. § 841(a)(1); count three with possession of an unregistered machine gun, 26 U.S.C. § 5861(d); count four with possession of firearms not identified by serial number, 26 U.S.C. § 5861(i); and count five with possession of firearms by a convicted felon, 18 U.S.C. § 922(g)(1). We affirm.

## I. BACKGROUND

Watson owned a small upholstery business in a rural area of northern Florida. In August 1985 he bought a Cessna 210 airplane, tail number N2228R. He obtained a student pilot's license and kept the plane at a small airport in Cross City, Florida. Watson was an avid skydiver and on at least one occasion demonstrated his skydiving skills to observers at the Cross City airport.

On January 22, 1987, agents of the United States Customs Service ("Customs") applied for a warrant to install a transponder in Watson's airplane. A transponder is a device that emits an electronic signal that allows law enforcement agencies to track

---

\* Honorable Lenore C. Nesbitt, U.S. District Judge for the Southern District of Florida, sitting by designation.

airplanes by radar. An affidavit supporting the warrant application stated that it was Customs' belief that Watson was using his airplane to smuggle marijuana into northern Florida from the Central American country of Belize. The affidavit stated that Customs' belief was based, to a large degree, on information received from a confidential source. According to this information, Watson would fly from Cross City to a clandestine airstrip in Belize, pick up a load of marijuana, fly back to northern Florida, then airdrop his cargo at various points along the countryside. The affidavit also stated that the confidential source had told Customs that Watson would be leaving on another smuggling trip within two weeks. On the basis of this affidavit and additional material submitted under seal the reviewing judge found probable cause and issued the warrant. On January 23, 1987, under cover of darkness, Customs installed a transponder on Watson's airplane. The agent who installed the transponder noticed that the interior of the airplane had been stripped and had all of the passenger seats removed. He also noticed that the doors had been modified to open upwards rather than sideways.[1]

The incident leading to Watson's indictment on the two drug counts (counts one and two) occurred only seven days after the transponder was installed. During the morning of January 31, Watson took off in his airplane after telling the manager of the Cross City airport that he was going to either Alabama or Georgia to pick up a new airplane wing. The airport manager observed that Watson took his parachute with him. That night, at approximately 11:45 p.m., a United States Air Force radar station began receiving a transponder signal indicating that an aircraft was approaching the Florida coast from the general direction of Belize. A Customs agent who was monitoring the signal dispatched a Black Hawk helicopter and a Cessna Citation to intercept the target aircraft. The two Customs aircraft pursued the target aircraft over the Gulf of Mexico and northern Florida for more than six hours, tracking the target aircraft with the Citation's radar. At one point, the Black Hawk's pilot was able to shine a high-intensity beam of light on the target aircraft. He identified it as a Cessna 210 airplane, tail number N2228R. He also could tell that the airplane was heavily loaded with cargo and appeared to have only one person, the pilot, aboard.

When the light fell on the Cessna 210, the airplane began to engage in evasive, circular maneuvers. After it failed to avoid its pursuers, it began to drop its cargo at various locations throughout the countryside and over the ocean. The pilot of the Citation, seeing these drops through an infrared monitor, charted their location and notified his headquarters. Finally, at approximately 6:00 a.m. on February 1, the Citation's pilot, by radar, saw the Cessna 210 descend rapidly from 15,000 feet to 3000 feet and disappear. The airplane was directly over water when it disappeared from the radar screen. N2228R has not been seen since.[2]

An officer of the Florida Marine Patrol was dispatched that same morning to the drop locations charted by the Citation's pilot and recovered three duffel bags filled with marijuana. The officer found various maps and navigational charts of Belize and northern Florida inside one of the bags. Watson's fingerprints were found on some of these documents.

Two days after this incident, on February 3, agents from Customs obtained a search warrant and searched Watson's upholstery shop. They seized several items that the government entered into evidence against Watson at his ensuing trial. A pair of night vision goggles, two hand-held walkie-talkies, and a police call radio directory were among the items seized.

The events leading to Watson's indictment on the weapons counts (counts three

---

**1.** An expert witness at Watson's trial testified that smugglers often strip their airplanes so the airplanes can carry more contraband; smugglers modify the doors to make it easier to airdrop the contraband.

**2.** An expert witness also testified that smugglers, to avoid capture, often parachute out of their airplanes just before ditching them into the sea.

through five) began when Dennis Smith, a deputy-sheriff from Gilchrist County, Florida, was on patrol on February 13, 1987. He stopped a light blue van that he suspected was being driven by an intoxicated driver. As Smith approached the van, it sped off and a high speed chase began. The driver of the van opened fire on Smith with a machine gun and Smith returned fire. Neither Smith nor the driver of the van was hurt, but Smith's patrol car was disabled and the driver of the van escaped. Several bullets were removed from Smith's patrol car. The van subsequently was discovered abandoned and had Watson's fingerprints on it. At Watson's trial, Smith identified Watson as the driver of the van.

Watson ultimately was apprehended on February 26, 1987, after another high speed attempt to avoid capture by law enforcement officials. Watson had two unregistered weapons in his possession when he was apprehended, one of which was a machine gun. Expert ballistics testimony revealed that the bullets found lodged in deputy Smith's patrol car came from this same weapon.

Watson was charged on all five counts in one indictment. Prior to his trial, he moved to sever the drug counts from the weapons counts; this motion was denied. He also filed a motion to suppress all evidence seized as a result of the transponder being placed aboard his airplane. As grounds for this motion, he argued that the affidavit submitted in application for the transponder warrant did not support a finding of probable cause. The district court also denied this motion.

At trial, Watson chose to exercise his fifth amendment privilege not to testify. During closing argument, his counsel emphasized to the jury that the government had failed to disprove alternative explanations for where Watson may have gone in his airplane on January 31 and why his airplane had not been seen since. For example, his counsel argued, Watson might have gone skydiving that day and left his "airplane with someone else for repairs." The prosecutor, in response to these comments, advised the jury that Watson "has

no duty to present evidence, has no duty to testify, you shouldn't hold that against him," but stated "[i]f [Watson] was skydiving with somebody else, he is the one who knows which witness to call to tell you about that." Watson objected to these comments by the prosecutor and moved for a mistrial. The objection was overruled and the motion for mistrial denied. Watson thereafter was convicted on all counts and sentenced accordingly.

## II. DISCUSSION

### A.

On appeal, Watson first argues that the district court erred in failing to sever the drug counts from the weapons counts. Rule 8(a) of the Federal Rules of Criminal Procedure governs joinder of offenses for one trial:

Two or more offenses may be charged in the same indictment or information in a separate count for each offense if the offenses charged, whether felonies or misdemeanors or both, are of the same or similar character or are based on the same act or transaction or on two or more acts or transactions connected together or constituting parts of a common scheme or plan.

Fed.R.Crim.P. 8(a). Watson argues that the joinder of the drug counts with the weapons counts did not meet the requirements of Rule 8(a) because the incident from which the drug counts arose was not connected in time, location, or any other common thread with the incidents from which the weapons counts arose. He further argues that misjoinder under Rule 8 is inherently prejudicial and mandates mistrial, citing *United States v. Marionneaux*, 514 F.2d 1244 (5th Cir.1975), *cert. denied sub nom. Partin v. United States*, 434 U.S. 903, 98 S.Ct. 298, 54 L.Ed.2d 189 (1977).

■ While *Marionneaux* indeed stands for the proposition that misjoinder under Rule 8 is inherently prejudicial, *see id.* 514 F.2d at 1248, the Supreme Court recently ruled squarely to the contrary in *United States v. Lane*, 474 U.S. 438, 106 S.Ct. 725, 88 L.Ed.2d 814 (1986), holding that misjoin-

der under Rule 8 is subject to harmless error analysis. Although the holding in *Lane* specifically concerned misjoinder of parties under Rule 8(b), the language of the opinion leaves no doubt that the harmless error standard applies equally to misjoinder of offenses under Rule 8(a).[3]

An error involving misjoinder under Rule 8 is harmless unless it " 'affects substantial rights' and ... results in actual prejudice because it 'had substantial and injurious effect or influence in determining the jury's verdict.' " *Lane*, 474 U.S. at 449, 106 S.Ct. at 732 (quoting *Kotteakos v. United States*, 328 U.S. 750, 776, 66 S.Ct. 1239, 1253, 90 L.Ed. 1557 (1946)). Applying this standard to the case at hand, we hold that the joinder of the drug counts against Watson with the weapons counts against him did not affect his substantial rights; therefore, the district court's failure to sever the drug counts from the weapons counts was not reversible error.[4]

Whether Watson's substantial rights were affected by his trial on the drug counts at the same time he was tried on the weapons counts requires a determination of whether there was a reasonable chance the jury might not have convicted him on either set of counts alone had he been tried on just those counts. Watson does not argue that his conviction on the weapons counts might have been caused at least partially by inclusion of the drug counts in the same trial;[5] rather, he argues that his conviction on the drug counts might have been caused at least partially by inclusion of the weapons counts in the same trial. This argument is not persuasive.

The evidence presented to convict Watson on the weapons counts would have been admissible against him in a separate trial on the drug counts alone. Evidence relevant to the weapons charges arose out of the shootout incident with deputy Smith on February 13 and the incident of Watson's ultimate capture on February 26. Watson's actions on both of these days could be construed as part of an attempt to avoid capture for smuggling marijuana. Evidence of flight is admissible to prove consciousness of guilt for the underlying offense. *United States v. Ramon–Perez*, 703 F.2d 1231 (11th Cir.1983), *cert. denied*, 464 U.S. 841, 104 S.Ct. 136, 78 L.Ed.2d 130 (1983). We recognize that when " 'there exists a significant time delay from the commission of the crime, or the point at which the suspect becomes aware that he is the subject of a criminal investigation, to the time of flight' evidence of flight may be inadmissible." *Id.* 703 F.2d at 1233 (quoting *United States v. Borders*, 693 F.2d 1318, 1326 (11th Cir.1982), *cert. denied*, 461 U.S. 905, 103 S.Ct. 1875, 76 L.Ed.2d 807 (1983)). Here, however, the total delay between the smuggling incident and Watson's capture was less than twenty-six days. This delay was insignificant, particularly since Watson offered no alternative explanation for his attempts to avoid capture. *See Ramon–Perez*, 703 F.2d at 1233 (evidence of defendant's flight, occurring more than seven weeks after he committed the underlying crime, was admissible to prove consciousness of guilt, particularly since he offered no alternative explanation for his flight).

### B.

Watson also contends on appeal that the comments by the prosecutor during

---

3. *Lane* has thus effectively overruled the following cases that were previously binding authority in the Eleventh Circuit, to the extent that they hold or imply that misjoinder under either Rule 8(a) or 8(b) is inherently prejudicial: *United States v. McLain*, 823 F.2d 1457, 1467 (11th Cir.1987); *United States v. Avery*, 760 F.2d 1219, 1222 (11th Cir.1985), *cert. denied*, 474 U.S. 1055, 106 S.Ct. 792, 88 L.Ed.2d 770 (1985); *United States v. Ellis*, 709 F.2d 688, 690 (11th Cir.1983); *United States v. Dennis*, 645 F.2d 517, 520 (5th Cir. Unit B Aug. 1981), *cert. denied*, 454 U.S. 1034, 102 S.Ct. 573, 70 L.Ed.2d 478 (1981); *United States v. Levine*, 546 F.2d 658, 661 (5th Cir.

1977); *United States v. Marionneaux*, 514 F.2d 1244, 1248 (5th Cir.1975), *cert. denied sub nom. Partin v. United States*, 434 U.S. 903, 98 S.Ct. 298, 54 L.Ed.2d 189 (1977); and *United States v. Bova*, 493 F.2d 33, 35 (5th Cir.1974).

4. We need not decide whether the joinder requirements of Rule 8(a) were satisfied.

5. Such an argument would have been fruitless; the evidence against Watson on the weapons counts was overwhelming.

closing argument were improper and mandated mistrial. We conclude that mistrial was not necessarily mandated by the prosecutor's comments and therefore the district court committed no reversible error by refusing to grant a mistrial. The standard for determining if a prosecutor has made an impermissible comment on a defendant's right not to testify is " 'whether [or not] the statement was manifestly intended or was of such a character that a jury would naturally and necessarily take it to be a comment on the failure of the accused to testify.' " *United States v. Vera*, 701 F.2d 1349, 1362 (11th Cir.1983) (quoting *United States v. Dearden*, 546 F.2d 622, 625 (5th Cir.1977), *cert. denied sub nom. Goldstein v. United States*, 434 U.S. 902, 98 S.Ct. 295, 54 L.Ed.2d 188 (1977)). We begin by noting that the person responsible for answering this question in the first instance is the trial judge, for only the trial judge has the opportunity to observe the prosecutor's demeanor firsthand. We therefore review only for abuse of discretion the trial judge's determination of whether manifest intent was present. *See Williams v. Wainwright*, 673 F.2d 1182, 1185 (11th Cir. 1982) (trial court's decision is only to be reversed if the jury would have *necessarily* viewed the prosecutor's comments as manifestly intended to be a comment on the defendant's refusal to testify); *United States v. Pool*, 660 F.2d 547, 561 (5th Cir. Unit B Nov. 1981) (trial court has broad discretion to control closing argument).

█ It clearly was reasonable for the district court to construe the comments made by the prosecutor as not manifestly intended to comment on the defendant's right not to testify. The comments appeared to concern the failure of the defense to counter the evidence presented by the government, not the failure of the defendant to testify. A comment on the failure of the defense, as opposed to the defendant, to counter or explain the testimony presented or evidence introduced does not violate the defendant's fifth amendment right not to testify. *Dearden*, 546 F.2d at 625. The trial judge also could have considered the prosecutor's preface of her remarks with the admonishment to the jury that Watson had no duty to testify as tending to negate any possibility that the jury would misinterpret the prosecutor's comments. Finally, it was particularly reasonable for the trial judge to determine that the prosecutor's comments were innocuous when they only were made after the defense counsel's prior reference to the government's failure to disprove all alternative explanations for the whereabouts of Watson and his airplane.

### C.

█ Watson's final two contentions on appeal warrant little discussion. He argues that the evidence was insufficient to support his conviction on the drug counts. In addressing this argument, we review the evidence in the light most favorable to the government and may reverse only if no reasonable trier of fact could have found Watson guilty beyond a reasonable doubt. *United States v. Montes–Cardenas*, 746 F.2d 771, 778 (11th Cir.1984). A reasonable trier of fact could have found from the circumstantial evidence presented by the government that Watson was the man piloting the Cessna 210 on the night of January 31—February 1, particularly since fingerprints were found on documents inside one of the bags of marijuana. Such a finding is even more reasonable when one considers that the defense failed to offer any evidence tending to establish an alternative explanation of what happened that night.

Watson's final contention is that the district court should have granted his motion to suppress evidence resulting from the placement of the transponder on his airplane. We have reviewed the affidavit supporting the application to install the transponder as well as information concerning the confidential informant provided by the government to the court under seal and conclude that the finding of probable cause was amply supported.

The judgment of the district court is

AFFIRMED.