[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
January 30, 2007
THOMAS K. KAHN
CLERK

_____

No. 06-11651
Non-Argument Calendar
_____

D. C. Docket No. 05-00026-CR-4-SPM

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

DESMOND JACKSON,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Northern District of Florida

_____

**(January 30, 2007)**

Before TJOFLAT, HULL and MARCUS, Circuit Judges.

PER CURIAM:

Desmond Jackson appeals from his convictions for conspiracy to possess with intent to distribute cocaine and attempt to possess with intent to distribute cocaine, in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(B)(ii), and 846. On

appeal, Jackson argues: (1) that the district court erred by denying his motion to suppress evidence seized from a truck he drove to an apartment to pick up a package of cocaine because there was no probable cause to support the search warrant; and (2) that the prosecutor's closing argument improperly referenced Jackson's failure to testify and impugned defense counsel's character, and thereby violated his Fifth Amendment rights and mandated a new trial. After careful review, we affirm.

A district court's ruling on a motion to suppress presents a mixed question of law and fact. United States v. Zapata, 180 F.3d 1237, 1240 (11th Cir. 1999). We review the district court's findings of fact for clear error and its application of law to those facts de novo. Id. The district court's factual findings include credibility determinations, to which we accord "considerable deference." United States. v. Ramirez-Chilel, 289 F.3d 744, 749 (11th Cir. 2002) (citation and internal quotation marks omitted). Moreover, in our review, we construe all facts in the light most favorable to the prevailing party below. United States v. Bervaldi, 226 F.3d 1256, 1262 (11th Cir. 2000).

In evaluating whether a prosecutor's argument constitutes an impermissible comment on a defendant's failure to testify, a court considers whether the argument was manifestly intended, or was of such a character that a jury naturally

and necessarily understand it, to be a comment on the defendant's exercise of his right to remain silent. United States v. Watson, 866 F.2d 381, 386 (11th Cir. 1989) We normally would review a district court's application of this standard for abuse of discretion. Williams v. Wainwright, 673 F.2d 1182, 1185 (11th Cir. 1982). Where no objection was made at trial, however, the standard of review is whether the prosecutor's remarks constituted plain error. Fed. R. Crim. P. 52(b); United States v. Odom, 858 F.2d 664, 667 (11th Cir. 1988).[1]

The relevant facts are straightforward. On May 10, 2005, a criminal complaint was filed against Jackson alleging that he knowingly conspired with others to possess, and attempted to possess, with intent to distribute more than 500 grams of cocaine. Special Agent Louis Andris of the Drug Enforcement Administration filed an affidavit in support of the criminal complaint and attested to the following. On May 10, 2005, while conducting drug interdiction inspections at a FedEx facility, investigators with the Tallahassee Police Department ("TPD") identified a package with "Harret Potter" listed as the sender. The package's printed label indicated it originated from a FedEx outlet in Berkeley, California,

---

[1]We note that the district court sustained an objection by Jackson after one remark, but he did not seek a curative instruction or any other relief at that point. Although, it is debatable whether Jackson preserved his objection as to all of the prosecutor's remarks he now challenges, we need not decide the preservation issue here because under either standard of review, any impropriety by the prosecutor would not mandate reversal.

3

but the package's processing codes indicated the package was shipped from a different location. The package was signed to permit delivery without the signature of the recipient, but the sender's signature did not match the sender's printed name. The package was sealed at each outside seam, which Special Agent Andris noted would make it more difficult for a drug-detection dog to smell controlled substances in the package. The package was addressed to 2003 Bellevue Way, apartment 1313, Tallahassee, Florida, but a records check indicated that no such address existed in the apartment complex. Ultimately, FedEx opened the package and found approximately three kilograms of field-tested cocaine. Special Andris attested that the drugs constituted a distribution quantity with a value between $60,000 and $75,000.

Agent Andris further stated that the TPD officers believed that the apartment reference on the address label could have been "B13" and, based on this belief, attempted to deliver the package using an officer dressed as a FedEx employee. The undercover officer knocked on the apartment door of unit "B13" several times, but no one came to the door, so he waited in his vehicle for several minutes, but was not contacted by anyone. As the officer exited from the apartment parking lot, a man ran up to him shouting "B13," and when the officer asked "Potter?" the man

replied "B13."  The man was taken into custody, and identified as Jackson, with a Jacksonville, Florida address.

According to Special Agent Andris, Jackson waived his Miranda[2] rights, but was reluctant to provide any address or contact information, and later said he lived in Tallahassee.  Jackson also said that a girlfriend lived in "B13," but that he had stayed with a different girlfriend.  Jackson identified a vehicle (later found to be a Dodge Durango truck) he was using, which had a stolen license plate.  After being arrested, Jackson denied having said "B13" to the undercover officer, and later said that he was waiting for a package containing money from his mother, but he was unable to say how much money he was expecting and he would not or could not provide a telephone number for his mother.

In his affidavit, Special Agent Andris also stated that the female resident of apartment "B13" said that Jackson had told her not to answer the door when the delivery person knocked.  She also said that when the delivery person walked away, Jackson called someone on his cellular telephone and said, "Hey dog, they just left," and then he walked outside.  Special Agent Andris concluded that there was probable cause to believe that Jackson conspired to possess cocaine with the intent to distribute.

---

[2] Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

At a preliminary detention hearing, the government introduced Andris's affidavit and Jackson submitted a letter from his mother in which she said that he was not capable of the alleged criminal conduct and that she regularly sent him care packages, food, clothing, and money. The district court entered an order finding probable cause existed to believe that Jackson had committed an offense, and the court ordered him detained. Jackson was later indicted on two counts of drug trafficking, to which he pled not guilty.

Prior to trial, Jackson moved to suppress evidence that was seized on May 10th from the Dodge Durango truck that was parked outside of unit B13 and Jackson had identified as in his possession when he was arrested. Jackson sought suppression of several money orders and a cell phone, arguing that the evidence was seized pursuant to a warrant that was not supported by probable cause. Jackson submitted a copy of the search warrant and the warrant's supporting affidavit from TPD Investigator Wilder.

The search warrant stated that inside a 1999 Dodge Durango, displaying a stolen license plate, police were authorized to search for "cocaine; letters; telephone and address lists, photos, accounting ledgers and other documents and records pertaining to controlled substance possession and transactions; United States currency; and paraphernalia used in controlled substance possession, use, or

6

transactions." According to supporting affidavit, Jade Burrell, the female resident of "B13," told officers that Jackson was in her apartment waiting for a package to be delivered. During a search of the apartment, the investigating officers recovered a set of keys which Burrell said did not belong to her and probably belonged to Jackson. The Dodge Durango truck was parked outside of Burrell's apartment.

According to Investigator Wilder, after being Mirandized, Jackson admitted to having been the last person to drive the Dodge Durango truck, but he said he did not know who the registered owner was. One of Jackson's friends, Shenica Lockett, stated that she had last seen him driving the truck at 6:30 a.m. on May 10th, when he told her that he was on his way to Jacksonville with a cousin. Investigator Wilder stated his belief that Jackson intended to obtain the cocaine from the FedEx driver at Burrell's apartment and then drive to Jacksonville.

In his motion to suppress, Jackson argued that the affidavit in support of the search warrant did not provide any reason to believe that any sort of controlled substance or evidence would be found in the Dodge Durango truck, and instead authorized only a "fishing expedition," rather than a search based on a reasonable probability of discovering evidence related to the offense. The government responded there was probable cause for issuance of the warrant, and, in the alternative, that the officers had acted in good faith upon a facially valid warrant in

7

conducting their search, which yielded the discovery of a shoe box, which matched shoes Jackson left in Burrell's apartment, Jackson's cellular telephone, documents pertaining to a package shipment to California, and records of financial transactions, including a multi-thousand dollar transfer to California.

After a hearing on the motion to suppress, at which the district court granted Jackson's motion to amend the suppression motion so as to include everything found in the Dodge Durango truck, the district court denied the motion, finding a substantial evidentiary basis existed from which to conclude that there was a fair probability that contraband or evidence of a crime would be found in the truck. The court noted that Jackson had admitted to driving the truck to the apartment complex, where he expected to receive delivery of the package. The court found that a reasonable inference could be made that Jackson planned to use the truck that day to travel to Jacksonville after accepting delivery of the cocaine. The court also found that the large quantity of cocaine involved gave rise to a likelihood that Jackson would possess records for receipt, delivery, and payment or other items of evidentiary value.

The case proceeded a jury trial which resulted in a mistrial. At a second trial, the government presented eight witnesses on the first day of trial, and then

rested.[3]  Later that day, Jackson presented his mother, Veronica Solomon, as the only defense witness.  During closing arguments, the government's counsel made the following statement in rebuttal:

> Now, the defense has no responsibility to present evidence; but, as you have seen, they have the ability to present evidence.  He got that car from somebody the cops can't trace, because he wouldn't or couldn't tell him who the name of the vehicle [owner] was.  If there is an innocent explanation for that Western Union, then the defense has the ability to bring those people in.
>
> If there is an innocent explanation for the UPS, defense has the ability to bring that in.  And more clearly, if there's an innocent explanation for that series of phone calls on the day the dope was being delivered, before the dope is being delivered, when the dope is being delivered, and after the dope is being delivered, then the defense has the ability to call the guy who was on the other end of that phone call.
>
> If there is some reason that any package . . . being sent to Mr. Jackson couldn't be sent to his girlfriend, Shanika Lockett's apartment, the defense has the ability to call Shanika Lockett to explain that to you.  The defense would like to blow a lot of smoke and shine a lot of light- -

At this point, Jackson objected on the basis that the preceding argument was "improper."  The district court sustained the objection and did nothing further.  Notably, Jackson did not ask for a curative instruction or a mistrial, nor at any time did he elaborate on his objection to the prosecutor's argument.

---

[3] The record does not contain transcripts from the jury trial.

The jurors were instructed that the defendant was not required by law to prove his innocence or to produce any evidence at all, and, if a defendant elected not to testify, they could not consider that in any way during their deliberations. The jurors were further instructed that the government had the burden of proving a defendant guilty beyond a reasonable doubt, and that if it failed to do so, the jurors must find that defendant not guilty.

The jury found Jackson guilty on both counts. The district court subsequently sentenced him to concurrent 87-month terms of imprisonment, followed by concurrent 4-year terms of supervised release. This appeal followed.

First, Jackson argues the district court erred by denying his motion to suppress the evidence seized from the Dodge Durango because there was not probable cause to support the search warrant for the truck. Jackson contends that because he never possessed the cocaine, nor did he regain possession of the truck prior to being arrested, his act of driving the truck to pick up a package containing narcotics does not, alone, establish probable cause to search the vehicle. We disagree.

"Probable cause to support a search warrant exists when the totality of the circumstances allow a conclusion that there is a fair probability of finding contraband or evidence at a particular location." United States v. Brundidge, 170

10

F.3d 1350, 1352 (11th Cir. 1999) (citation omitted). Probable cause is "a fluid concept[,]" which involves an "assessment of probabilities in particular factual contexts[.]" Id. (quotation and citation omitted). We afford "great deference" to a lower court's determination of probable cause. Id.

Here, probable cause existed to obtain a search warrant for Jackson's vehicle. By the time law enforcement sought the warrant, they possessed the following evidence suggesting that Jackson had committed a criminal act. First, the officers knew that a package containing three kilograms of cocaine was mailed from California to Tallahassee via FedEx to an apartment likely identified as "B13." They also knew that when a controlled delivery was attempted, Jackson chased the departing delivery truck to recover a package. Moreover, Burrell, who resided in apartment "B13," told the officers that Jackson had been waiting for a package that had been sent to him at Burrell's address, although he did not reside there, and had told her not to answer the door. Burrell also told the officers that Jackson had left behind a set of keys to a truck, which he parked outside of her apartment. The license tag on the truck was discovered to be stolen, and Jackson could not say who the registered owner was. Finally, another of Jackson's friends told police that Jackson had left her apartment at 6:30 a.m. that day and said he was on his way to Jacksonville. On this record, the totality of the circumstances tended

11

to show that Jackson drove the Dodge Durango to apartment "B13" for the purposes of receiving delivery of the large amount of cocaine and planned to transport the cocaine in the truck later that day to Jacksonville for distribution. Moreover, we readily conclude that there was a fair probability of finding evidence of the large cocaine transaction in the Dodge Durango truck. See Brundidge, 170 F.3d at 1352 ("Probable cause to support a search warrant exists when the totality of the circumstances allow a conclusion that there is a fair probability of finding contraband or evidence at a particular location."). Accordingly, the district court did not reversibly err by denying the motion to suppress.

We likewise find no reversible error based on the prosecutor's rebuttal closing argument. Prosecutorial misconduct will be the basis for reversal only if, in light of the entire trial and any curative instructions, the misconduct prejudicially affected the defendant's substantial rights. United States v. Hasner, 340 F.3d 1261, 1275 (11th Cir. 2003). A defendant's substantial rights are prejudicially affected when a reasonable probability arises that, but for the remarks, the outcome of the trial would have been different. United States v. Wilson, 149 F.3d 1298, 1301 (11th Cir. 1998).

In United States v. Watson, 866 F.2d 381 (11th Cir. 1989), the defendant did not testify and on appeal, we reviewed a closing argument in which the prosecutor

12

advised the jury that the defendant had not called any witnesses and had not offered any evidence of an alternative explanation to the government's theory of the case. Following the prosecutor's comments, the defense objected and moved for a mistrial. The objection was overruled and a motion for mistrial was denied. We affirmed, holding that it was reasonable for the district court to construe the comments made by the prosecutor as not manifestly intended to comment on the defendant's right not to testify. Id. at 384. Rather, we observed that the "comments appeared to concern the failure of the defense to counter the evidence presented by the government, not the failure of the defendant to testify," and that did not violate the defendant's Fifth amendment right not to testify. Id.

The challenged argument in the instant case is analogous to the argument in Watson in that it is more likely that the comments concerned the failure of the defense to counter the evidence presented by the government, and were not intended as a comment of Jackson's failure to testify. Even assuming, arguendo, that the prosecutor's comments were of such a character that a jury would take them to be a comment on the failure of the accused to testify, Jackson does not argue that his substantial rights were prejudicially affected, nor does he explain how, but for the remarks, the outcome of the trial would have been different.[4]

_____

[4]We also find no error with respect to the prosecutor's comment that "the defense would like to blow a lot of smoke and shine a lot of light . . . ." Even if this comment was improper, it was

13

Accordingly, he has not established reversible error based on improper argument by the prosecutor.

**AFFIRMED.**

---

an isolated instance and on this record, we could not conclude, as we must in order to reverse on this basis, that "the misconduct [was] so pronounced and persistent that it permeate[d] the entire atmosphere of the trial." United States v. McLain, 823 F.2d 1457, 1462 (11th Cir. 1987) (internal quotations and citations omitted), overruled on other grounds by Watson, 866 F.2d at 385 n. 3.