[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 07-13456
Non-Argument Calendar
_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
JULY 9, 2008
THOMAS K. KAHN
CLERK

D. C. Docket No. 06-10023-CR-KMM

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

NELSON REYES,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Southern District of Florida

_____

**(July 9, 2008)**

Before BIRCH, CARNES and BARKETT, Circuit Judges.

PER CURIAM:

Nelson Reyes appeals his conviction for obstruction of a boarding, in

violation of 18 U.S.C. § 2237(a)(2)(A), and unauthorized entry into Cuban territorial waters, in violation of 50 U.S.C. § 192 and 33 C.F.R. §§ 107.215, 107.230. Reyes has not shown that the district judge abused his discretion in denying Reyes's motion for mistrial or, alternatively, a new trial because he did not carry his burden of showing that remarks by the prosecutor referencing the lack of evidence from the witnesses were manifestly intended to comment on Reyes's failure to testify, or that they necessarily would have been construed as such by the jury. We affirm.

## I. BACKGROUND

A federal grand jury returned a three-count indictment against Reyes and Modelin Machado and charged them with forcibly resisting a boarding authorized by federal law, in violation of 18 U.S.C. § 2237(a)(2)(A) ("Count 2"), and entering Cuban territorial waters without written permission, in violation of 50 U.S.C. § 192 and 33 C.F.R. §§ 107.215, 107.230 ("Count 3"). R1-1. Reyes pled not guilty.

During opening statements at trial, Reyes's counsel represented that the evidence would show that Reyes did not resist the boarding but that he was beaten by the Coast Guard officers. R2 at 44-46. He also suggested that the Coast Guard charged Reyes with obstructing the boarding in order to "justify" its "over zealous treatment of him." Id. at 46.

2

Brooke Allison Millard, a Coast Guard Lieutenant stationed in Florida on a patrol boat, the Matagorda, testified that, on July 19, 2006, officers on her boat spotted a southbound go-fast boat. Id. at 47-53. The Matagorda tried to apprehend the go-fast boat, but it fled. Id. at 54-55. They pursued the boat for approximately five and a half hours until it stopped because of mechanical problems. Id. While the go-fast boat was fleeing, it entered Cuban waters at least twice. Id. at 55.

On cross-examination, Lieutenant Millard said that, while watching the officers boarding the go-fast boat from the Matagorda, she saw Reyes resist being handcuffed. Id. at 65-67. Machado, the operator of the boat, complied with the officers' order to put his hands up, but Reyes moved to the front of the boat and got down on the deck. Id. at 67. Manuel Hernandez, the Matagorda's assistant administrator, was the operator of the infrared camera on the ship. Id. at 79-81. He recorded the chase and the boarding and testified that the recording accurately depicted the events of the evening. Id. at 92-93.

On cross-examination, Reyes's counsel introduced two still pictures taken from the infrared recording. Id. at 94-96, 98-99; Exhs. NR1, NR2. In the first picture, the civilians on the boat were not visible, although the first boarding party member was getting on the boat. R2 at 97-98; Exh. NR1. Hernandez said that he saw one of the civilians remaining standing with his hands raised while the other

3

moved forward and got down below the side of the boat and was not visible. Id. at 97-103. On redirect, Hernandez testified that the camera cannot record heat images through the side of the boat, so anything that happened on the deck below the sides of the boat was not visible. Id. at 104.

The four members of the boarding party each testified. Id. at 106-07, 148-49; R3 at 189-90, 240-41. All members of the boarding team testified that the men on the boat were ordered to put their hands up, and, while Machado complied, Reyes moved to the front of the boat, where there was a cabin. R2 at 119-20, 150-52; R3 at 194-95, 243. It is unclear whether Reyes was standing, kneeling, or lying on the deck when the officers boarded. R2 at 136-37, 153; R3 at 172-75, 214. Additionally, the boarding party's translator may have ordered the men to get down as he was boarding. R3 at 243, 249-50, 260. The officers testified that Reyes resisted being handcuffed. R2 at 122-24, 138, 147, 154; R3 at 196-97, 246. The two officers who subdued Reyes both said that he was punching, kicking, and biting them while on the deck. R2 at 154; R3 at 165, 197, 201. They used strength techniques and struck Reyes with their elbows and knees in order to subdue and handcuff him. R2 at 152; R3 at 164-65, 198-200. Once Reyes was handcuffed, he was compliant and was not struck again. R2 at 148; R3 at 166, 202-03. At the conclusion of the government's case-in-chief, the defense rested without

4

introducing additional evidence or calling any witnesses. R3 at 262-63.

During his closing argument, the prosecutor stated that "[i]n his opening statement defense counsel told you that the defendant Reyes did exactly what he was told to do. Is that true? Has that been verified by the evidence, the evidence, that you heard come from that witness stand?" Id. at 270. Later in his closing argument, the prosecutor stated:

> Now the defendant, he has no burden here. The burden starts with the government and stays with the government. We embrace that. It is our burden. But if you remove the only explanation, the only justification, the only set of facts that ha[s] been proffered to you through the witness stand, and that is Reyes refused to comply so we had to use force to gain his compliance, you can forget about that.

Id. at 272-73. Defense counsel objected after both of these statements. Id. at 270, 273. After closing arguments, Reyes's counsel moved for a mistrial and contended that the government shifted the burden of proof and that its comments were probably interpreted as comments on Reyes's remaining silent. Id. at 290. The district judge noted that he did not hear anything sufficient to merit a mistrial but stated that Reyes could make a post-trial motion citing the transcript if necessary. Id. at 291. The judge then instructed the jurors that they could not consider the fact that Reyes did not testify, because he was under no obligation to do so and statements made by the lawyers were not evidence. Id. at 293-94. The jury found

5

Reyes guilty on both counts.  Id. at 304; R1-55.

Following the verdict, Reyes's counsel filed a motion for a mistrial or, alternatively, for a new trial.  R1-63.  Defense counsel argued that a reference to Reyes's silence could not have been invited since it occurred during the government's initial closing argument.  Id. at 5-6.  The prosecutor had referred to a lack of testimonial evidence twice, apparently showing manifest intent to comment on Reyes's not testifying.  Id. at 6-7.  Even if a plausible explanation had been given for the remark, counsel contended that the jury necessarily would have construed the remark to refer to Reyes's decision not to testify.  Id. at 7.  Finally, defense counsel argued that any error could not be considered harmless because the evidence was not overwhelming and no curative instruction was given.  Id. at 7-9.

The district judge denied the motion.  First, the judge concluded that the comment was not manifestly intended to refer to Reyes's decision to not testify but rather it referred to a failure by the defense generally to offer testimonial evidence to rebut the government's case.  R1-68 at 1-2.  The judge then determined that the jury would not necessarily consider the remark to refer to Reyes's not testifying but rather as a comment about the logical inferences from the evidence presented.  Id. at 2.  Finally, the judge concluded that the prosecutor did not shift the burden of proof because the instruction on the burden of proof eliminated any prejudice

6

caused by the prosecutor's remarks.  Id. at 3.  The judge sentenced Reyes to eighteen months of imprisonment.

## II. DISCUSSION

Reyes argues on appeal that the prosecutor's comments were improper and cites United States v. LeQuire, 943 F.2d 1554 (11th Cir. 1991).  He contends that the prosecutor manifestly intended to comment on his silence, especially since he did so during his initial closing argument and not in response to an argument by the defense, and he mentioned the lack of testimonial evidence twice.  Reyes submits that the remark had to refer to his failure to testify because the prosecutor referred to evidence from witnesses, while the defense had submitted only two pictures into evidence.  Reyes argues that the jury could not have construed the remark in any way other than referencing the fact that Reyes did not testify because the prosecutor mentioned only evidence from witnesses.  Finally, he contends that the error cannot be considered harmless because the evidence was not overwhelming, and there was no curative instruction.

Because the district judge has the opportunity to observe the prosecutor's demeanor firsthand, the decision to deny a motion for a mistrial based on improper remarks during closing argument is reviewed for abuse of discretion.  United States v. Watson, 866 F.2d 381, 386 (11th Cir. 1989).  To determine whether a prosecutor

has impermissibly commented on a defendant's decision not to testify, "courts must inquire whether the statement 'was manifestly intended or was of such character' that the jury would necessarily construe it as a comment on the failure of the accused to testify." United States v. Chirinos, 112 F.3d 1089, 1099 (11th Cir. 1997) (citation omitted). The defendant has the burden of establishing that one of the two criteria exists. United States v. Knowles, 66 F.3d 1146, 1163 (11th Cir. 1995). We "will not find that a prosecutor manifestly intended to comment on a defendant's failure to testify if some other explanation for the prosecutor's remark is equally plausible." Chirinos, 112 F.3d at 1099. Therefore, if a neutral explanation for the prosecutor's remarks exists, then there was no "'manifest intent.'" United States v. Garcia, 13 F.3d 1464, 1474 (11th Cir. 1994) (quoting Watson, 866 F.2d at 386). To decide whether the jury would construe a statement as a comment on the failure of the accused to testify, "'the question is not whether the jury possibly or even probably would view the challenged remark in this manner, but whether the jury necessarily would have done so.'" Chirinos, 112 F.3d at 1099 (citation omitted).

During his closing argument, the prosecutor in LeQuire told the jury that the defendant was disadvantaged by the fact that he did not "have the guts" to get on the stand and tell his side of the story. 943 F.2d at 1564. We determined that this

8

remark was probably not "manifestly intended" to comment on the defendant's not testifying, because the prosecutor presented a plausible alternative that the remark was invited by the defense's accusation that the government's witnesses were liars. Id. at 1565. Although we recognized that the comment could not have been interpreted by the jury as anything but a comment on the defendant's silence, id., we concluded that the error was harmless because the evidence against the defendant was overwhelming, and the district judge gave a curative instruction, id. at 1567.

In Watson, after the defense emphasized during closing argument that the government had failed to disprove the defense's alternative explanations of the charged offense, the prosecutor responded by advising the jury that Watson had no duty to testify, but that, if there was someone who could have testified differently than the government's allegations as to what had occurred, the defendant would have known which witnesses to call. 866 F.2d at 384. We determined that the remarks were a permissible comment on the defense's failure to counter the evidence presented by the government and were not manifestly intended to comment on the defendant's right to not testify. Id. at 386. We also noted that the district judge could have considered the prosecutor's comment reminding the jury that the defendant did not have to testify to have negated any possibility that the

9

jury would have misinterpreted the remarks.  Id.

Similarly, in Chirinos, the prosecutor first asked the jury members whether they had heard any witness testimony disputing that a diagram of a room was drawn properly.  112 F.3d at 1099.  Later, the prosecutor told the jury that only one person had testified regarding photographs taken of a room, and the prosecutor then asked the jury whether it had heard anyone say that the photograph was not the room in question.  Id.  We decided that the statements were proper comments on the defense's failure to counter or explain the evidence.  Id. at 1100.  Further, we determined that the comments would not necessarily have been construed by the jury as a comment on the failure of the defendant to testify and noted that the district judge had "instructed the jury that the law does not require a defendant to testify to prove his innocence or to produce any evidence at all."  Id.

Finally, in United States v. Blankenship, 382 F.3d 1110 (11th Cir. 2004), the prosecutor in closing argument noted that the government had the burden of proof and informed the jury that, if the defense wanted the jury to believe a fact, it had to prove that fact.  Id. at 1127.  We recognized that the statement was legally incorrect, but held that it was not manifestly intended to comment on the defendant's silence because the prosecutor expressly recognized the defendant's right to remain silent.  Id. at 1128.  The jury may have interpreted the statements as

10

referring to a failure of the defense generally. Id. We additionally recognized that an isolated comment would need to be "much more prejudicial" to merit a reversal. Id.

Reyes asserts that the decision of the district judge should be reversed based on our decision in LeQuire, which is distinguishable. In this case, as in LeQuire, it appears that the prosecutor did not manifestly intend to refer to Reyes's decision not to testify. Instead, it is likely that the prosecutor was referring to the failure of the defense to rebut the government's evidence that Reyes resisted the boarding. Therefore, the prosecutor's reference to the witnesses plausibly could have been meant to refer to the fact that every officer who witnessed the events said that Reyes resisted the boarding, since the recording and pictures were inconclusive regarding Reyes's resistance. Given this plausible explanation, Reyes has not shown that the prosecutor manifestly intended to comment on his silence. Chirinos, 112 F.3d at 1099-1100 (determining that there is no manifest intent to comment on a defendant's not testifying when a plausible, proper explanation exists).

Unlike LeQuire, the jury in this case would not necessarily have construed the prosecutor's statements as a reference to Reyes's right not to testify. In LeQuire, the prosecutor told the jury that the defendant did not "have the guts" to

11

take the witness stand, which expressly commented on the defendant's right to silence. 943 F.2d at 1564. In this case, the prosecutor did not expressly refer to Reyes's decision not to testify. Instead, the prosecutor's statement was similar to that in Chirinos, where the prosecutor asked the jury members if they had heard any contrary evidence from the witnesses. As in Chirinos, the jury in this case could have construed the prosecutor's remarks as referencing a failure of the defense to present evidence rather than a failure of the defendant to testify. Chirinos, 112 F.3d at 1099-1100. This conclusion is especially true even though the prosecutor mentioned Reyes both times because the prosecutor prefaced his argument as a rebuttal to the defense's statement during opening argument that Reyes did exactly what he was asked to do, and the prosecutor later reminded the jury that only the government carried the burden of proof. Watson, 866 F.2d at 386. Therefore, the jury would not necessarily have construed the remarks as referencing Reyes's right not to testify. Chirinos, 112 F.3d at 1099-1100. Significantly, the district judge's instructions, issued almost immediately after Reyes's counsel moved for mistrial, reminded the jury that Reyes was under no obligation to testify and that the arguments of the lawyers were not evidence. Chirinos, 112 F.3d at 1100.

Reyes has not carried his burden of showing that the remarks in question

12

were manifestly intended to comment on his failure to testify because the prosecutor's reference to the witnesses plausibly could have been meant to refer to the fact that every officer who witnessed the events said that Reyes resisted the boarding. Furthermore, the remarks would not necessarily have been construed as referring to Reyes's silence by the jurors, who could have construed the prosecutor's remarks as referencing a failure of the defense to present evidence rather than as a failure of Reyes to testify. Therefore, the district judge did not abuse his discretion in denying Reyes's motion for a mistrial or, alternatively, a new trial.

## III. CONCLUSION

Reyes has appealed his conviction for obstruction of a boarding and unauthorized entry into Cuban territorial waters. Because Reyes has not met his burden of showing that the subject remarks were intended to comment on his failure to testify, or that they necessarily would have been construed as such by the jury, the district judge's denying Reyes's motion for a mistrial or, alternatively, a new trial was appropriate. Therefore, Reyes's conviction is **AFFIRMED.**