[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
JAN 5, 2007
THOMAS K. KAHN
CLERK

No. 06-11316
Non-Argument Calendar

_____

D. C. Docket No. 04-00508-CR-1-CAP-1

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

TIMOTHY C. MOSES,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Northern District of Georgia

_____

**(January 5, 2007)**

Before BLACK, MARCUS and PRYOR, Circuit Judges.

PER CURIAM:

Timothy Moses appeals his convictions and sentence for securities fraud, 18

U.S.C. §§ 2, 1348(1)-(2), and perjury, 18 U.S.C. § 1621(1). He argues that the deposition on which his perjury conviction was based should have been suppressed by the district court, or at least he was entitled to an evidentiary hearing on the matter; the district judge and the prosecution improperly commented on his decision not to testify at trial; and the district court erred in basing his sentence on an estimated amount of loss caused by his activities instead of the exact amount of loss. We affirm.

We review the denial of a motion to suppress under a mixed standard, reviewing findings of fact for clear error and the application of the law to those facts de novo. United States v. Rhind, 289 F.3d 690, 693 (11th Cir. 2002). All facts are construed in the light most favorable to the prevailing party. United States v. Roy, 869 F.2d 1427, 1429 (11th Cir. 1989). The decision not to hold an evidentiary hearing is reviewed for abuse of discretion. United States v. Slocum, 708 F.2d 587, 600 (11th Cir. 1983). The denial of a motion for mistrial based on improper commentary on the decision of a defendant not to testify is reviewed for abuse of discretion. United States v. Knowles, 66 F.3d 1146, 1163 (11th Cir. 1995). We review questions of law arising under the Sentencing Guidelines de novo. United States v. Crawford, 407 F.3d 1174, 1177 (11th Cir. 2005).

Moses argues that his deposition should not have been suppressed without

an evidentiary hearing because he made a prima facie case of government misconduct–specifically, that the SEC knew, when his deposition occurred, that the United States Attorney was contemplating a criminal investigation. The SEC filed a civil complaint against Moses on February 6, 2003, after he issued a series of false press reports. The SEC deposed Moses on February 11. As required by federal regulation, the SEC sought permission from the United States Attorney to have FBI agents testify in its civil proceeding. 28 C.F.R. § 16.21. On February 13, the United States Attorney initiated a criminal investigation, but the indictment against Moses was filed on September 29, 2004.

Moses argues that the close proximity of his deposition to the initiation of the criminal investigation, coupled with the fact that there was contact between the SEC and the United States Attorney to obtain permission for FBI agents to testify in the civil action, established a prima facie case that the SEC knew the United States Attorney was contemplating a criminal investigation at the time of the deposition. We disagree. It is well established that the federal government may pursue civil and criminal actions either "simultaneously or successively," Standard Sanitary Manufacturing v. United States, 226 U.S. 20, 52, 33 S. Ct. 9, 16 (1912), and a federal statute expressly allows the SEC and the Department of Justice to share information relating to parallel investigations, see 15 U.S.C. § 78u(d).

Whenever the United States Attorney is required to give permission for FBI agents to testify in a civil proceeding, he or she will inevitably consider, at least to some minimal degree, the possibility of initiating a criminal investigation, depending on how the civil record develops. The bare conclusion that the United States Attorney was contemplating a criminal investigation does not establish a prima facie case of government misconduct. Moses presents no evidence that the contemplation of the United States Attorney, at the time of Moses's deposition, had reached any significant level.

The SEC had a legitimate purpose in bringing its civil action, and Moses attributes nothing in his deposition to either the direct or indirect influence of the United States Attorney. Moses argues that he would not have perjured himself had he known the United States Attorney was contemplating a criminal investigation, but Moses was given ample warning that civil depositions are often used in criminal prosecutions. Moses was also told his false testimony could lead to a charge of perjury, and he could invoke his Fifth Amendment right against self-incrimination.

The close proximity of the deposition to the initiation of the criminal investigation is readily explained by the fact that Moses's wrongdoing had recently come to light. It is not a cause for alarm that both the SEC and the United States

4

Attorney sought swiftly to address a newly discovered wrongdoing. The district court did not abuse its discretion in denying Moses an evidentiary hearing, and because Moses failed to make even a prima facie case of prosecutorial misconduct, the district court did not err in denying the motion to suppress Moses's deposition.

Moses next argues that two statements, one by the district court and one by the government, constituted impermissible commentary on his decision not to testify. First, when Moses rested his case and the government gave no rebuttal, the district judge remarked to the jury that the case ended "a little quicker than I figured" and told the jury they would be excused for lunch while a charge conference was held. Second, during closing arguments, counsel for Moses argued that when the press releases were issued, Moses believed the government was interested in purchasing products from IBCL, and the government objected that there was no evidence Moses was aware that the EPA had conducted further tests on the product.

Moses cannot establish that either statement was "manifestly intended or was of such a character that a jury would naturally and necessarily take it to be a comment on the failure of the accused to testify." United States v. Dearden, 546 F.2d 622, 625 (5th Cir. 1977) (emphasis added). The surprise of the district judge is just as easily explained by the decision of the government not to present any

5

rebuttal evidence as by the decision of Moses not to testify, and it does not necessarily follow from the objection of the government that it was commenting on Moses's refusal to testify. The district court did not abuse its discretion.

Finally, Moses argues that the district court impermissibly based its loss calculation on estimated figures when the government could have obtained more exact data. Dr. Hugh Cowen, an adjunct professor at the Goizueta Business School at Emory University, examined actual trading data from 86 million of the 118 million trades (73 percent) in IBCL stock between January 29 and February 6, 2003, and, after deriving an average closing price for these shares, determined that the 539 investors who purchased ICBL stock lost a total of $1.65 million. Cohen extrapolated an additional loss of $560,000 based on the remaining 27 percent of trades for a total loss of $2.2 million. Moses argued that the government was required to obtain specific purchase and sale figures on each stock traded because that information was available to it.

The commentary to Guidelines section 2B1.1 provides that the district court "need only make a reasonable estimate of loss" which "shall be based on available information." "There are cases where it would be unduly cumbersome [to calculate the exact loss of each victim], potentially requiring large expenditures of time and resources to determine large amounts of detailed information. Such a

6

rigid rule is not required by the Guidelines." United States v. Orton, 73 F.3d 331, 335 (11th Cir. 1996).

The amount of loss fixed by the district court was reasonable. Dr. Cohen used actual trading data to derive a loss estimate for 73 percent of the sales, and extrapolated a figure to estimate the loss derived from the remaining 27 percent. The district court only held Moses responsible for the first of these figures. Moses does not argue that calculating the loss using the actual purchase and sale prices of 100 percent of the shares in question would result in a lower amount. The district court did not err.

Moses's convictions and sentence are

**AFFIRMED.**