PUBLISH

IN THE UNITED STATES COURT OF APPEALS
FOR THE ELEVENTH CIRCUIT

---------------------------------------
No. 98-2200
---------------------------------------
D. C. Docket No. 3:97-CR-104-LAC

FILED

U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
04/02/99
THOMAS K. KAHN
CLERK

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

CHANCEY WADE BRUNDIDGE,

Defendant-Appellant.

-----------------------------------------------------------------

Appeal from the United States District Court
for the Northern District of Florida

-----------------------------------------------------------------

**(April 2, 1999)**

Before EDMONDSON and BLACK, Circuit Judges, and RESTANI*, Judge.

_____
* Honorable Jane A. Restani, Judge, U.S. Court of International Trade, sitting by designation.

PER CURIAM:

Chancey Brundidge ("Brundidge") appeals the district court's denial of his motion to suppress evidence. He also appeals his sentence. We see no reversible error, so we affirm.

## Background

A confidential informant ("CI"), with a companion, went to a motel room where they met Brundidge, also known as "Smoke." Based on this meeting, the CI contacted Investigator Frank Forte ("Forte"). Forte drove the CI to the motel, and the CI pointed out Brundidge's room. The CI also described Brundidge's car. Forte left the motel to get a search warrant, after calling a surveillance unit to the scene.

The affidavit supporting the warrant was the only information on probable cause provided to the judge. Although some other information was included in the affidavit, the following facts provided the main support for the showing of probable cause:

On September 11th, 1997, your affiant [Forte] was contacted by a reliable confidential informant, hereafter referred to as RCI who stated to your affiant that a black male known only to the RCI as Smoke, was selling Cocaine Base and Cocaine HCL at the above described location. The RCI stated to your affiant that on this same date, the RCI accompanied another individual to the above described location and entered. The RCI stated to your affiant that individual to [sic] whom the RCI was with, purchased a quantity of Cocaine Base from Smoke while inside the above described location. The RCI stated to your affiant that Smoke attempted to sell the individual to [sic] whom the RCI was with a quantity of Cocaine HCL, however the individual refused. The RCI stated to your affiant that while inside the above described location, the RCI observed two cookies of Cocaine Base, a large quantity of Cocaine Base cut for distribution, approximately three eighth of an ounce quantities of Cocaine HCL, and a semi-automatic handgun.

The RCI is familiar with the physical appearance of Cocaine Base and Cocaine HCL and has seen Cocaine Base on at least one hundred (100) occasions, and has seen Cocaine HCL on at least two hundred (200) occasions. The RCI has provided information to law enforcement concerning illegal activity on at least eight occasions and has proven to be truthful and reliable on every occasion. The RCI is responsible for the arrests of at least five persons and the recovery of approximately $3,500.00 in illegal narcotics.

The judge issued the search warrant for Brundidge's motel room.

Brundidge was arrested after leaving the motel room later that afternoon. Police found cocaine and a weapon in Brundidge's car during a warrantless search. Then, a search of Brundidge's motel room, based on Forte's search warrant, found more drugs.

Brundidge pled guilty to three counts: (1) possession of a firearm by a felon, in violation of 18 U.S.C. §§ 922(g), 924(c); (2) knowing and intentional possession of cocaine and cocaine base with intent to

4

distribute, in violation of 18 U.S.C. §§ 841(a), 841(b)(1)(B)(iii); and (3) possession of a firearm during and in relation to a drug trafficking crime, in violation of 18 U.S.C. § 924(c).

## Discussion

First, we address Brundidge's claim that the district court should have granted his motion to suppress the evidence obtained from the search of Brundidge's motel room. Rulings on motions to suppress evidence involve mixed questions of law and fact. We review the factual findings of the district court for clear error and the application of the law to those facts de novo. See United States v. Anderton, 136 F.3d 747, 749 (11th Cir. 1998).

Probable cause to support a search warrant exists when the totality of the circumstances allow a conclusion that there is a fair probability of finding contraband or evidence at a particular location. See United States v. Gonzalez, 940 F.2d 1413, 1419 (11th Cir. 1991). We give "[g]reat deference" to a lower court judge's determination of probable cause. Id.

We think it will be useful to the resolution of Brundidge's claim to recite some well-established law on probable cause. "[P]robable cause is a fluid concept -- turning on the assessment of probabilities in particular factual contexts[.]" Illinois v. Gates, 462 U.S. 213, 232 (1983). To avoid "rigid" legal rules, Gates changed the "two-pronged test" of Aguilar v. Texas, 378 U.S. 108, 114 (1964), into a totality of the circumstances test. See Gates, 462 U.S. at 230-35. Under the Gates totality of the circumstances test, the "veracity" and "basis of knowledge" prongs of Aguilar, for assessing

6

the usefulness of an informant's tips, are not independent. "[T]hey are better understood as relevant considerations in the totality of the circumstances analysis that traditionally has guided probable cause determinations: a deficiency in one may be compensated for ... by a strong showing as to the other[.]" Id. at 233.

Brundidge's main contention is that probable cause for the search warrant did not exist because the affidavit failed to reflect independent police corroboration of the CI's story. But we think requiring independent police corroboration[1] -- as a per se rule in each and every case -- is contrary to Gates and other precedent for two reasons. First,

---

[1] Independent police corroboration of a CI's tip must be distinguished from other kinds of corroboration. For example, corroboration of a CI's tip can also occur by "creating circumstances under which [the informant] is unlikely to lie." United States v. Foree, 43 F.3d 1572, 1576 (11th Cir. 1995).

as we have discussed, <u>Gates</u> criticizes per se rules for the determination of probable cause. Second, independent police corroboration has never been treated as a requirement in each and every case. <u>See</u> <u>United States v. Harris</u>, 403 U.S. 573, 576 (1971) (approving, without discussing corroboration, an affidavit with no police corroboration); <u>United States v. Farese</u>, 612 F.2d 1376, 1378 (5th Cir. 1980) (even though some corroboration of informant's story took place, probable cause likely existed without corroboration). Brundidge cites to no case in which independent police corroboration was treated as a requirement.[2]

---

[2] Brundidge relies heavily on <u>United States v. Foree</u>, 43 F.3d 1572 (11th Cir. 1995), a case purporting to "demarcat[e] the outer limits of probable cause." <u>Id</u>. at 1577 n.6. Because <u>Foree</u> was an "outer limit[]," and the case contained some independent police corroboration of an informant's affidavit, says Brundidge, a case with less independent police corroboration cannot create probable cause. We disagree for two reasons. First, the veracity

8

Even under Aguilar's "two-pronged test," independent police corroboration was not explicitly required: the test talks only about the informant's veracity and basis of knowledge.

Using the CI's "veracity" and "basis of knowledge" as guides for assessing the affidavit's showing of probable cause, we think Forte's affidavit made a sufficient showing of probable cause to justify the search warrant. The CI's basis of knowledge was good: The CI gave a detailed description of the drugs in the room and the sale of some of those drugs in his presence. An "explicit and detailed description of

---

of the Foree informant was not impressive because of the near-conclusory allegations about the informant's reliability in the search-warrant affidavit. In this case, the CI has more demonstrated veracity (as discussed later). Second, once Foree concluded that probable cause existed on the circumstances before it, the Foree court could say nothing binding as precedent about the "outer limits" of probable cause.

alleged wrongdoing, along with a statement that the event was observed firsthand, entitles [the CI's] tip to greater weight than might otherwise be the case." Gates, 462 U.S. at 234.

The CI's basis of knowledge made up for any weaknesses in the CI's veracity. But we think the CI's veracity was satisfactory, too. The affidavit explained that the CI had provided information to law enforcement "at least" eight times in the past and that the CI was "truthful and reliable" on each occasion. Also, the CI's past tips led to the arrest of five persons and the recovery of $3,500 in illegal drugs. Although some information is not included -- like whether the CI's tips were essential to past arrests, or whether the tips were the result of the CI's own drug activity -- it is apparent that the CI had not lied about these past events, had provided useful enough information to provide

probable cause for five arrests, and helped recover some illegal drugs. We agree with the district court's finding that the CI "was reliable in the past instances."

In addition to providing the basis of the CI's knowledge, the level of detail meant that the CI was unlikely to lie, because "if the warrant issued, lies would likely be discovered in short order and favors falsely curried would dissipate rapidly." Foree, 43 F.3d at 1576 (creating circumstances under which CI is unlikely to lie is a way to corroborate informant's veracity).[3]

---

[3] We note that Forte kept track of the CI's whereabouts after receiving tips from the CI.

We think the CI's veracity and basis of knowledge, in the totality of these circumstances, justify the district court's decision that the search warrant was supported by probable cause.[4]

---

[4]Because of our resolution of the probable cause issue, we do not decide the government's alternative reason for affirming the district court: that Brundidge waived his right to appeal the search warrant of the motel room because it was not in his written suppression motion. We note that the government's waiver argument was close. Although the district court relied in part on the waiver argument to deny the suppression motion, Brundidge may not have seen the motel room search warrant affidavit before submitting his written suppression motion, and he disputed the existence of probable cause to search the motel room at the hearing on the suppression motion.

Brundidge makes one sentencing argument worthy of discussion.[5]

The district court sentenced Brundidge to 294 months on Counts I and II, served concurrently, and five years on Count III (for violating 18 U.S.C. § 924(c)), served consecutively to his 294-month sentence. Sentences for violating Section 924(c) must be served consecutively.

Brundidge correctly notes that a Section 924(c) sentence must be served before a sentence for the underlying offense. See Jackson v. United States, 976 F.2d 679, 682 (11th Cir. 1992). So, the district court committed an error in sentencing Brundidge to serve his five-year sentence for violating Section 924(c) after the sentence for Counts I and II.

---

[5]Brundidge's claim that 18 U.S.C. § 924(e) conflicts with 18 U.S.C. § 924(A)(2) is without substantial merit, so we decline to address it.

Brundidge, however, cannot explain why this error was harmful. Brundidge admits he "is unclear how an amended sentence might affect Mr. Brundidge." He does suggest that, "possibl[y]," changing Brundidge's sentence would make a difference to the Bureau of Prisons. But without a sufficiently concrete harm, we will not remand the case for resentencing.[6] See Barnes v. Estelle, 518 F.2d 182, 183 (5th Cir. 1975) (finding harmless error when resentencing would produce same sentence); See also United States v. Langford, 946 F.2d 798, 804-805 (11th Cir. 1991) (multiple counts for same offense not prejudicial and not

---

[6] Jackson does not require reversal in this case: Jackson's underlying offense was parolable, but Brundidge's underlying offense is not parolable. So, unlike Jackson's sentence, Brundidge's sentence for the underlying offense cannot be shortened.

creating danger of receiving multiple sentences for single offense because sentences were concurrent).

We conclude that Brundidge's motion to suppress evidence was properly denied and that no harmful error requires us to remand this case for resentencing. Therefore, we affirm.

AFFIRMED.