[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 14-10646
Non-Argument Calendar
_____

D.C. Docket No. 7:13-cr-00307-LSC-HGD-1


UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

CHESTER CHARLES GALLOWAY, II,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Northern District of Alabama
_____

(September 11, 2014)


Before TJOFLAT, MARTIN and ROSENBAUM, Circuit Judges.


PER CURIAM:

The circumstances that led to Chester Charles Galloway, II's arrest and convictions in this case began to unfold on September 28, 2012, when the Tuscaloosa, Alabama, police received reports from individuals that their credit cards were being used without their permission to make purchases at local retail stores.  A few days later, the police responded to a call that fraudulent credit cards had been used at Belk, a department store, and obtained the store's surveillance video showing a man making several large purchases in a short period of time.  The man turned out to be Galloway.  On October 18, 2012, while interviewing an individual suspected of several burglaries, the police obtained information that led to Galloway's arrest.  The individual lived in an apartment building.  He said that he had recently helped a man move his furniture into the man's apartment, Apartment D, and that while there, he watched the man swipe credit cards through an electronic machine, after which he commented: "This is how I make my living."

On October 26, 2012, the police went to Apartment D.  No one was there, so the police waited.  A woman soon approached the apartment, identified herself as Chiquita Watkins, and said that she and her boyfriend, Chester Galloway, had subleased the apartment from Martell Jones.  At the officers' request, Watkins phoned Galloway.  He then came to the door, where Investigator William Helms immediately recognized him as the man appearing in the Belk surveillance video and arrested him for identity theft.  Following the arrest, the officers conducted a

2

protective sweep of the apartment, which took less than two minutes, determined that no one was there, and obtained a search warrant.  Executing the warrant, the officers found two, fifty-round boxes of Winchester 9 mm ammunition; a Jimenez Arms 9 mm pistol; Galloway's cell phone, which contained photos of a credit-card skimmer; five re-encoded credit cards; a credit-card encoder; and receipts relating to the fraudulent purchases the police were investigating.

On July 30, 2013, Galloway and Watkins were indicted by a Northern District of Alabama grand jury.  Galloway was charged with six counts: Counts One and Two, possession of one-hundred rounds of Winchester 9 mm ammunition and a Jimenez Arms 9 mm pistol, in violation of 18 U.S.C. § 922(g)(1); Count Three, aiding and abetting his girlfriend, Chiquita Watkins, in making a false statement to the Bureau of Alcohol, Tobacco, Firearms and Explosives, that she had exclusive ownership and possession of the Jimenez pistol, in violation of 18 U.S.C. §§ 1001 and 1002; Count Four, hindering an investigation by having Watkins make false statements to law enforcement, in violation of 18 U.S.C. § 1512(b)(3); Count Five, trafficking in and using one or more counterfeit access devices, in violation of 18 U.S.C. § 1029(a)(1); and Count Seven, possessing device-making equipment, in violation of 18 U.S.C. § 1029(a)(4).[1]

---

[1] Watkins was charged with Count Three and Count Six (a violation of 18 U.S.C. § 1029(a)(1)).  Pursuant to a plea agreement, she pled guilty to the Count Three offense and was sentenced to probation for a term of 60 months.  The Government dismissed Count Six.

Following arraignment, Galloway moved the District Court to suppress the evidence the police obtained in searching his apartment. The District Court held an evidentiary hearing on the motion and denied it except as to statements Galloway made to the police prior to receiving a Miranda warning. Galloway then entered into a plea agreement with the Government. He entered conditional guilty pleas to Counts One and Two, see Fed. R. Crim. P. 11(a)(2), and unconditional guilty pleas to the four remaining counts. At sentencing, the District Court adopted the presentence investigation report, which calculated the Guidelines range on each count at thirty to thirty-seven months based on an offense level of fifteen and a criminal history category of IV. The court then varied upward from that range and sentenced Galloway to concurrent prison sentences of sixty months.

Galloway appeals his convictions on Counts One and Two on the ground that the District Court erred in denying his motion to suppress evidence yielded by the police search. He appeals his sentences on the ground that, in light of the sentencing objectives set out in 18 U.S.C. § 3553(a), they are substantively unreasonable.[2] We affirm.

---

[2] Galloway's notice of appeal is from the District Court's judgment. His brief states that this court has jurisdiction under 28 U.S.C. § 1291. The notice does not mention 18 U.S.C. § 3742(a) which grants convicted defendants the right to appeal their sentences. Galloway's opening brief treats his sentences as one sentence of 60 months, intimating that if we reverse his convictions on Counts One and Two we must reverse his one sentence as well. The Government's brief follows suit. What counsel apparently do not realize is that the reversal of Galloway's convictions on Counts One and Two would have no effect on his sentences on Counts Three, Four, Five and Seven.

I.

We review de novo the question of whether the affidavit of Investigator Helms submitted with the police application for a warrant to search Galloway's apartment established probable cause. United States v. Jiminez, 224 F.3d 1243, 1247 (11th Cir. 2000); United States v. Miller, 24 F.3d 1357, 1360 (11th Cir. 1994). In doing so, we "give due weight to inferences drawn from those facts [recited in the affidavit] by resident judges and local law enforcement officers.'" Jimenez, 224 F.3d at 1248 (quotation marks omitted).

"Probable cause to support a search warrant exists when the totality of the circumstances allow a conclusion that there is a fair probability of finding contraband or evidence at a particular location." United States v. Brundidge, 170 F.3d 1350, 1352 (11th Cir. 1999). An informant's veracity, reliability, and basis of knowledge are relevant considerations in determining whether probable cause existed under the totality of the circumstances, and a deficiency in one may be compensated for by a strong showing in another. Id. at 1352–53. "[P]robable cause is a fluid concept—turning on the assessment of probabilities in particular factual contexts—not readily, or even usefully, reduced to a neat set of legal rules." Illinois v. Gates, 462 U.S. 213, 232, 103 S. Ct. 2317, 2329, 76 L. Ed. 2d 527 (1983). To determine whether probable cause exists to issue a search warrant, the issuing judge must "make a practical, common-sense decision whether, given all

5

the circumstances set forth in the affidavit . . . there is a fair probability that contraband or evidence of a crime will be found in a particular place." Id. at 238, 103 S. Ct. at 2332.

"For probable cause to exist, however, the information supporting of the government's application for a search warrant must be timely, for probable cause must exist when the magistrate judge issues the search warrant." United States v. Harris, 20 F.3d 445, 450 (11th Cir. 1994). In reviewing a staleness challenge, we do not apply arbitrary time limitations, but instead review each case based on the facts presented. Id. We may consider "the maturity of the information, nature of the suspected crime (discrete crimes or ongoing conspiracy), habits of the accused, character of the items sought, and nature and function of the premises to be searched." Id. If the affidavit "recites activity indicating protracted and continuous conduct, time is of less significance." United States v. Bervaldi, 226 F.3d 1256, 1265 (11th Cir. 2000) (quotation marks omitted). Stale information does not void an affidavit when the government's affidavit updates, substantiates, or corroborates the stale information. Harris, 20 F.3d at 450.

The District Court did not err in denying Galloway's motion to suppress based on the totality of the circumstances. Although the information supplied by the individual who helped Galloway move his furniture into Apartment D was approximately forty-days old, it indicated that the identity-theft crime was

6

continuous and ongoing such that it would be likely that the credit-card encoder was still present in Apartment D when the search warrant issued. Furthermore, Investigator Helms recognized Galloway as the man shown in the Belk surveillance video. In sum, because the court did not err in denying Galloway's motion to suppress the evidence used to obtain the convictions on Counts One and Two, those convictions are affirmed. We turn now to Galloway's argument that his sentences are substantively unreasonable.

## II.

Gall v. United States, 552 U.S. 38, 128 S. Ct. 586, 169 L. Ed. 2d 445 (2007), establishes that a court of appeals' review of a criminal sentence is a two-step process. First, the court must "ensure that the district court committed no significant procedural error, such as failing to calculate (or improperly calculating) the Guidelines range, treating the Guidelines as mandatory, failing to consider the § 3553(a) factors, selecting a sentence based on clearly erroneous facts, or failing to adequately explain the chosen sentence." Gall, 552 U.S. at 51, 128 S. Ct. at 597. Only then—after the court of appeals is certain that no significant procedural error has occurred—can it turn to the substantive reasonableness of the sentence. Id. In this case, Galloway does not contend that procedural error occurred; hence, we move straight to the question of whether his sentences are substantively unreasonable. Specifically, we consider whether his sentences, including the

7

upward variance of twenty-three months, constitute an abuse of discretion. See Gall, 552 U.S. at 51, 128 S. Ct. at 597. A court abuses its discretion when it (1) fails to consider all factors that were due significant weight, (2) gives an improper or irrelevant factor significant weight, or (3) commits a clear error of judgment by balancing the proper factors unreasonably. United States v. Irey, 612 F.3d 1160, 1189 (11th Cir. 2010) (en banc).

The factors that the court weighs are set out in 18 U.S.C. § 3553(a). "[A] district court commits a clear error in judgment when it weighs those factors unreasonably, arriving at a sentence that does not achieve the purposes of sentencing as stated in [that statute]." Id. (quotation marks omitted). These purposes include the need to reflect the seriousness of the offense, promote respect for the law, deter criminal conduct, and protect the public from the defendant's future criminal conduct. 18 U.S.C. § 3553(a)(2)(A)–(C). The court must also consider the nature and circumstances of the offense committed, the defendant's history and characteristics, the kinds of sentences available, the Guidelines range applicable to the defendant, United States Sentencing Commission policy statements, the need to avoid unwarranted sentencing disparities between defendants with similar records who have been found guilty of similar conduct, and any need to provide restitution to victims. Id. § 3553(a)(1), (3)–(7).

8

Though the district court is required to "evaluate all of the § 3553(a) factors when arriving at a sentence," it is permitted to attach "great weight" to one factor over others. United States v. Shaw, 560 F.3d 1230, 1237 (11th Cir. 2009) (internal quotation marks and citations omitted).

When a district court decides that a variance from the Guidelines range is in order, based on the § 3553(a) factors, it should explain why that variance "is appropriate in a particular case with sufficient justifications." Gall, 552 U.S. at 46, 128 S. Ct. at 594. In imposing an upward variance, the court is free to consider any information relevant to a defendant's background, character, and conduct. United States v. Tome, 611 F.3d 1371, 1379 (11th Cir. 2010); see also 18 U.S.C. § 3661 ("No limitation shall be placed on the information concerning the background, character and conduct of a person convicted of an offense which a court of the United States may receive and consider for the purpose of imposing an appropriate sentence.").

Finally, a sentence imposed below the statutory maximum penalty is one indicator of reasonableness. See United States v. Early, 686 F.3d 1219, 1222 (11th Cir. 2012); United States v. Gonzalez, 550 F.3d 1319, 1324 (11th Cir. 2008). For example, we have upheld as reasonable a sentence above the applicable advisory Guidelines range by more than nine years when it fell below the statutory maximum. Early, 686 F.3d at 1222 ("Although the upward variance was

9

substantial, it was still well below the maximum 900 months that [the defendant] could have received under the statute.").

We conclude that Galloway's sentences are not substantively unreasonable. The District Court properly considered the § 3553(a) factors.  It did not abuse its discretion by giving significant weight to Galloway's past criminal history—in addition to his conduct in this case—in deciding to sentence him above the Guidelines range, yet significantly below the statutory maximum penalty for the crimes he committed.[3]

AFFIRMED.

---

[3]  The maximum penalties for those crimes are as follows: 10 years imprisonment on Counts One and Two, five years on Count Three, 20 years on Count Four, 10 years on Count Five, and 15 years on Count Seven.