[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 16-17636
Non-Argument Calendar
_____

D.C. Docket No. 4:14-cr-00056-RH-CAS-2


UNITED STATES OF AMERICA,

Plaintiff - Appellee,

versus

CLEOLA SULLIVAN,

Defendant - Appellant.


_____

Appeal from the United States District Court
for the Northern District of Florida
_____

(December 5, 2017)

Before MARTIN, JILL PRYOR and ANDERSON, Circuit Judges.

PER CURIAM:

Cleola Sullivan appeals the district court's denial of her motion to suppress evidence stemming from a warrantless search of her vehicle after she was pulled over for a traffic violation. She contends that the officers violated her constitutional rights by continuing to detain her, after issuing a traffic warning, to conduct a search of her vehicle that was unsupported by probable cause. After careful review, we affirm the district court's ruling because the officers had probable cause to search her vehicle.

## I.     BACKGROUND

### A.     Factual Background[1]

Law enforcement began investigating Sullivan after she was identified by Jarrick Williams, whom the Drug Enforcement Agency ("DEA") had suspected of dealing cocaine. Williams was taken into custody after a search of his residence revealed 420 grams of cocaine along with other contraband. Following his arrest, Williams told agents that Sullivan was his primary cocaine supplier, he had known her for more than a year, and she transported cocaine by hiding it under her car's bumper. He also agreed to initiate controlled communications with Sullivan. In a

---

[1] We derive the facts from the transcript of the hearing on Sullivan's motion to suppress and the trial transcript. *See United States v. Newsome*, 475 F.3d 1221, 1224 (11th Cir. 2007) ("[I]n reviewing a denial of a motion to suppress, we review the entire record, including trial testimony.").

2

series of phone calls and text messages with Sullivan, Williams requested that she deliver him five ounces of cocaine, and Sullivan agreed.

After obtaining Sullivan's phone numbers from Williams, DEA Agent Matthew Vickers obtained a search warrant to track the associated Global Positioning System (GPS) information. When the GPS indicated Sullivan was travelling south toward Tallahassee, where Williams lived, Vickers arranged for agents to physically surveil her. After identifying Sullivan's vehicle, the agents began following her just west of Tallahassee. The agents observed Sullivan stop for gas before driving to a Walmart and parking next to a black Hyundai. She then exited her vehicle and entered the passenger side of the Hyundai, where she remained for a few minutes. Although the agents were unable to see what happened inside, they testified that they believed a bag had been exchanged.

Agents then followed Sullivan as she drove to Atlanta, Georgia. After arriving in Atlanta, Sullivan drove to a bank. An agent followed her inside, where she received a call from Williams, to which she responded, "You know I'm coming, that's why I called you." Trial Tr. Vol. II at 175 (Doc. 195).[2] She then withdrew $1,500, exited the bank, and briefly sat in the passenger side of a car that was waiting outside. Later that evening, Sullivan visited an industrial park, where agents were unable to continue following her.

---

[2] Citations to "Doc." refer to docket entries in the district court record in this case.

The following morning, the GPS showed that Sullivan had left Atlanta and was traveling southbound on I-75 toward Florida. Based on Sullivan's conversations with Williams, the agents expected that Sullivan was traveling to Tallahassee to deliver the cocaine and would take I-75 to I-10. Instead, Sullivan stayed on I-75, traveling south past I-10, causing the agents to lose physical surveillance. In response, Vickers contacted Sergeant Michael Rowlands of the Alachua County Sheriff's Department. Vickers explained to Rowlands that he suspected Sullivan was transporting cocaine under her bumper, and they decided that Rowlands would orchestrate "a traffic stop on Ms. Sullivan with independently-obtained probable cause." Tr. of Mot. to Suppress Hr'g at 99 (Doc. 148).

Rowlands recruited Officers Rodriguez and Abbot to assist him in stopping Sullivan. The officers positioned themselves in the center median of I-75, south of Paynes Prairie, Florida. While the officers waited for Sullivan's vehicle to appear, Vickers continued to update Rowlands about Sullivan's location. When the GPS indicated that Sullivan was nearing the officers' area, Vickers informed Rowlands. Rodriguez then spotted Sullivan's vehicle and observed that she was travelling too closely to the vehicle in front of her. Rodriguez pulled Sullivan over, and Rowlands communicated that fact to Vickers.

4

Rodriguez approached Sullivan and asked her for her driver's license, which she did not have.  He then asked Sullivan and her grandson, who was sitting in the back seat, to step out of the vehicle.  Rodriguez asked Sullivan if the officers could search her vehicle, and she agreed.  Rowlands began searching underneath the vehicle for contraband, but he did not find any.  When Rodriguez finished running Sullivan's information, he gave her a written traffic warning.

After Sullivan signed the warning, the officers decided to continue searching her vehicle.  When it began to rain, Rodriguez asked Sullivan and her grandson to wait in the back of Rodriguez's vehicle.  Having searched for thirty minutes and failed to find any evidence of contraband, Rowlands signaled it was time to conduct a dog sniff.  Abbot, a canine handler, circled the vehicle with a drug detection dog.  The dog eventually alerted to the front bumper.

By that time, it had begun raining heavily, so the officers decided to continue the search at the sheriff's office.  One of the officers drove Sullivan and her grandson in the back of his patrol car while another officer drove Sullivan's car to the sheriff's office.  After putting the vehicle on an elevated lift, Rodriguez spotted a sock tied under Sullivan's rear bumper, which contained one half of a kilogram of cocaine.  Following her arrest, Sullivan made inculpatory statements regarding her involvement in cocaine distribution.

5

### B.    Procedural History

Sullivan was charged by a grand jury in the Northern District of Florida with conspiracy to distribute five or more kilograms of a mixture and substance containing a detectable amount of cocaine and cocaine base, in violation of 21 U.S.C. §§ 841(a)(1), (b)(1)(A)(ii), and (b)(1)(C), as well as 21 U.S.C. § 846, and possession with intent to distribute 500 grams or more of a mixture and substance containing a detectable amount of cocaine, in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(B)(ii).  Prior to trial, Sullivan moved to suppress the cocaine found in her vehicle and her subsequent inculpatory statements.  Sullivan argued that the evidence should be suppressed because (1) her consent to search the vehicle did not extend to the dog sniff, (2) the officers unreasonably prolonged the stop to conduct the dog sniff, and (3) the dog's alert did not provide a reliable basis for the search.

After a hearing, the district court denied the motion to suppress, finding that the traffic stop was supported by probable cause based on Sullivan's traffic violation of following too closely and that Sullivan had consented to the search of her vehicle.  The district court found, however, that Sullivan's consent expired upon the conclusion of the traffic stop and thus could not justify the search conducted after the traffic warning had been issued.  Regardless, the district court concluded that the officers' search of Sullivan's vehicle was lawful because their

collective knowledge, including reports from the informant, controlled calls, and controlled text messages, "established probable cause to believe [Sullivan] would be transporting drugs on that day." Tr. of Mot. to Suppress Hr'g at 123 (Doc. 148).

After a four-day jury trial, Sullivan was convicted of both charges. She was sentenced to 120 months' imprisonment on both counts, running concurrently, followed by five years of supervised release. Sullivan appeals the denial of her motion to suppress.

## II.    STANDARD OF REVIEW

With respect to a motion to suppress, we review the district court's findings of fact for clear error and its application of the law to those facts *de novo*, construing the facts in the light most favorable to the prevailing party below—here, the government. *United States v. Lewis*, 674 F.3d 1298, 1302-03 (11th Cir. 2012). "We give great deference to a lower court judge's determination of probable cause." *United States v. Brundidge*, 170 F.3d 1350, 1352 (11th Cir. 1999) (internal quotation marks omitted).

## III.    DISCUSSION

On appeal, Sullivan argues that the traffic stop was unreasonably prolonged, violating her constitutional rights and requiring that the resulting physical evidence and inculpatory statements be suppressed. Sullivan argues that because her consent had expired following the traffic stop and there was no probable cause to

search her vehicle, her continued detention was unjustified.  We hold that because the officers had probable cause to justify the search, there was no violation of Sullivan's constitutional rights.[3]

The Fourth Amendment protects the "right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." U.S. Const. amend. IV.  This right is generally protected by requiring that searches be conducted pursuant to a warrant supported by probable cause.  *United States v. Tamari*, 454 F.3d 1259, 1261 (11th Cir. 2006).  There is an exception to the warrant requirement, however, for automobile searches.  Automobiles may be searched without a warrant if two requirements are satisfied:  "(1) the vehicle is readily mobile (i.e., operational); and (2) agents have probable cause to believe the vehicle contains contraband or evidence of a crime."  *Id.*  Probable cause, in turn, exists "when the facts and circumstances would lead a reasonably prudent [person] to believe that the vehicle contains contraband."  *United States v. Talley*, 108 F.3d 277, 281 (11th Cir. 1997) (alteration in original) (quoting *United States v. Campbell*, 920 F.2d 793, 796 (11th Cir. 1991)).  A court may aggregate multiple officers' knowledge and consider probable cause collectively when the officers

---

[3] Sullivan's only argument with respect to her seizure is that it was unlawful because there was no probable cause to search her vehicle.  We therefore assume, without deciding, that Sullivan's detention was lawful if there was probable cause to conduct the search.

"maintained at least a minimal level of communication during their investigation." *United States v. Willis*, 759 F.2d 1486, 1494 (11th Cir. 1985).

Here, Sullivan's vehicle was mobile when the search occurred, and viewing the evidence in the light most favorable to the government, there was probable cause to search the vehicle after the traffic warning was issued. Probable cause existed based on the tip from Williams, who had recently been found with cocaine, identified Sullivan as his primary supplier, and described how she hid cocaine under her car's bumper; Sullivan and Williams's phone calls and text messages arranging for the sale and delivery of cocaine; and Sullivan's statement on the phone in the bank indicating to Williams that she was coming to meet him. Although this information came from various officers, the district court correctly determined that because Vickers was in touch with the officers on the road, his knowledge could also be considered. *See Willis*, 759 F.2d at 1494.

As the district court acknowledged, the government's evidence was imperfect. Sullivan's driving past Tallahassee was inconsistent with the officers' expectation that she would deliver cocaine to Williams there. Additionally, the court noted, Vickers testified "in somewhat conclusory fashion." Tr. of Mot. to Suppress Hr'g at 130 (Doc. 148). The district court nevertheless concluded that "a reasonable officer with the information that was available to Mr. Vickers [would] believe that there were drugs in that car[.]" *Id.* Giving the required "great

9

deference" to the district court, we agree with its finding of probable cause. *Brundidge*, 170 F.3d at 1352 (internal quotation marks omitted).[4]  Because the evidence against Sullivan would lead "a reasonably prudent [person] to believe that the vehicle contain[ed] contraband," the district court properly found there was probable cause to conduct the search and thus that the automobile exception to the warrant requirement was satisfied.  *See Talley*, 108 F.3d at 281 (first alteration in original) (internal quotation marks omitted).

## IV.    CONCLUSION

Because the district court properly found there was probable cause to believe that Sullivan's vehicle contained contraband, the search of her vehicle was proper, and we affirm the district court's denial of Sullivan's motion to suppress the cocaine and her inculpatory statements.

**AFFIRMED.**

---

[4] Sullivan also argues that dog sniffs are an improper basis for probable cause because of their unreliability, and that this particular dog was insufficiently reliable.  However, the district court determined that there was probable cause to search Sullivan's vehicle independent of the dog's alert.  Because we agree with the district court's determination, we need not consider whether probable cause could properly be based on a dog sniff in this case.