[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 20-10187
Non-Argument Calendar
_____

D.C. Docket No. 2:18-cr-00586-ACA-JHE-1


UNITED STATES OF AMERICA,

Plaintiff - Appellee,

versus

EDWIN ARTIS PETTAWAY,
a.k.a. Fat,

Defendant - Appellant.

_____

Appeal from the United States District Court
for the Northern District of Alabama
_____

(January 14, 2021)

Before NEWSOM, BRASHER, and ANDERSON, Circuit Judges.

PER CURIAM:

Edwin Artis Pettaway appeals his convictions for possession with intent to

distribute more than 28 grams of cocaine base, in violation of 21 U.S.C. §§ 841(a)(1),

(b)(1)(B), and possession of a firearm in furtherance of a drug-trafficking crime, in violation of 18 U.S.C. § 924(c). Pettaway makes two arguments on appeal. First, he argues that the district court erred by denying his motion to suppress evidence collected from his house and vehicle. Specifically, he argues that the affidavit supporting the search warrant contained stale and misleading or false information. He also argues that he was unable to challenge information in the affidavit provided by a confidential informant because the district court erroneously denied his motion to disclose the informant's identity. Second, Pettaway argues that the district court erred by denying his motion for judgment of acquittal and contends that the jury lacked sufficient evidence to convict him on either charge.

## I. BACKGROUND

In the autumn of 2017, a confidential informant advised the Birmingham Police Department that a man known as "Fat" was distributing crack cocaine from a house in Birmingham, Alabama. The informant agreed to participate in a controlled purchase of cocaine under the supervision of a narcotics detective with the BPD. An initial purchase was completed, after which the informant presented the purchased drugs to the detective. The informant also provided a description of Fat that allowed the BPD to identify the man as Edwin Artis Pettaway. About three weeks later, the detective and informant successfully executed another controlled purchase at the house from the man identified as Pettaway.

2

Within two days of the second controlled purchase, the narcotics detective applied for and received a state-court search warrant for the house. A few days later, the detective and a team of officers converged on the house to execute the search warrant. Soon after entering the house, officers saw Pettaway emerge from a bedroom near the front of the house. Pettaway was the only person seen coming from that room, and no one else was found in the room. Officers detained Pettaway and approximately eleven other people found throughout the house.

After detaining the occupants outside, officers searched the house. Two officers searched the front bedroom that Pettaway was seen exiting. They found several sizable chunks of suspected crack cocaine spread across the floor. Future testing would confirm this substance as cocaine base weighing approximately 230 grams altogether. Officers also found a digital scale and a plate. Officers further found several items piled on top of the bed, including: a new vehicle tire; a beige satchel containing a loaded 9mm pistol, a prescription bottle labeled with Pettaway's name, Pettaway's bank-issued debit card, three cellphones, and cash; a "Tupperware-type box" containing scales and small bags; two more cellphones; loose cash; and a set of car keys. Using the keys recovered from the front bedroom, officers accessed and searched an SUV parked behind the house. The vehicle was registered to Pettaway. Inside the vehicle, officers found a loaded AR-15–style rifle

3

and Pettaway's driver's license. The license had been issued around one year prior to the search and bore the address of the house being searched.

A federal grand jury indicted Pettaway for possession with the intent to distribute more than 28 grams of cocaine base, in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(B), and possession of a firearm in furtherance of a drug-trafficking crime, in violation of 18 U.S.C. § 924(c)(1)(A)(i). Pettaway moved to suppress all evidence seized during the execution of the search warrant. He argued that the warrant was inadequate to establish probable cause, included facts that were "intentionally or recklessly misleading," and was based on information provided by an unreliable informant without sufficient independent corroboration.

The district court held a hearing on Pettaway's motion. At the close of evidence, the court orally denied the motion, concluding that the officer's affidavit established probable cause and did not contain intentionally or recklessly misleading facts. The court determined that the informant had "previously given accurate information" and that the detective had "independently verified" information provided by the informant. The court noted that Pettaway's driver's license linked him to the house, and the narcotics detective had observed Pettaway during the second controlled purchase. Moreover, the court found scant evidence showing that the house could not be entered by the front door, a key assertion that Pettaway had made in an attempt to show that the affidavit contained false information. Indeed,

4

the court concluded that a bar supposedly barring entry through the door could be removed. Finally, the court concluded that the officer's inability to recall certain information during the hearing did not undermine those facts as presented in the affidavit.

Pettaway proceeded to trial. In addition to the evidence recovered from Pettaway's house and vehicle, the government presented testimony from a number of narcotics detectives who had participated in the search of Pettaway's house. The officers testified that the evidence recovered from Pettaway's house and vehicle fit the pattern of a high-level drug distributer. At the close of the government's evidence, Pettaway moved for a judgment of acquittal. The court denied the motion. Later, after hearing testimony from the government's case agent, Pettaway renewed his motion for a judgment of acquittal. The motion was again denied. The jury convicted Pettaway on both counts.

The court sentenced Pettaway to 114 months in prison for possession with intent to distribute 28 grams or more of cocaine base. The court ordered that a consecutive 60-month prison term follow for possession of a firearm in furtherance of a drug-trafficking crime, followed by a 60-month term of supervised release.

## II. DISCUSSION

Pettaway presents two main arguments on appeal. First, he argues that the district court committed a reversible error by denying his motion to suppress the

5

evidence recovered from his house and vehicle, and his related motion to reveal the identity of the informant. Second, he argues that the district court committed reversible error by denying his motion for judgment of acquittal. We address both arguments in turn.

A. *The District Court Properly Denied Pettaway's Motion to Suppress*

Pettaway argues that the district court committed reversible error by denying his motion to suppress evidence of drugs and firearms found within the house and his vehicle. He contends that the affidavit supporting the search warrant lacked "veracity," that the informant supplying the information lacked a "basis of knowledge," and that the affidavit "lacked specificity." Additionally, Pettaway argues that the district court's denial of his motion to disclose the informant's identity prevented him from testing the veracity and basis of the information supplied by the informant at the suppression hearing. Finally, Pettaway argues that the information contained in the search warrant application was stale.

The government responds that the district court properly concluded that the supporting affidavit established probable cause and that it did not contain intentionally or recklessly misleading information concerning either the reliability of the informant or what the officer observed during the two controlled purchases. The government argues that because Pettaway's staleness argument was not presented to the district court, it is reviewed for plain error. Furthermore, the

6

government argues that Pettaway has abandoned the argument that the affidavit contained false facts because he has not raised it on appeal. Pettaway did not file a reply.

1.  The District Court Did Not Err in Determining That the Affidavit Established Probable Cause

We apply a mixed standard of review to decisions involving motions to suppress. We review findings of fact for clear error and the application of law to those facts *de novo*. *United States v. Lewis*, 674 F.3d 1298, 1302–03 (11th Cir. 2012). We construe facts in the light most favorable to the prevailing party below, affording substantial deference to the factfinder's credibility determinations, *id.* at 1203, and "give due weight to inferences drawn from those facts by resident judges and local law enforcement officers." *United States v. Jiminez*, 224 F.3d 1243, 1248 (11th Cir. 2000) (quoting *Ornelas v. United States*, 517 U.S. 690, 699 (1996)). Whether the facts so construed establish probable cause for a search warrant to issue is a legal conclusion we review *de novo*. *Jiminez*, 224 F.3d at 1248.

"Probable cause to support a search warrant exists when the totality of the circumstances allows a conclusion that there is a fair probability of finding contraband or evidence at a particular location." *United States v. Brundidge*, 170 F.3d 1350, 1352 (11th Cir. 1999) (per curiam). We give "great deference" to the determination of probable cause by a district court. *Id*. An informant's veracity, reliability, and "bases of knowledge" are relevant considerations in the totality-of-

7

the-circumstances analysis and do not operate independently. *Id*. at 1352–53. A deficiency in one of these considerations may be compensated for by a strong showing as to the other considerations. *Id*.

Here, the district court did not clearly err when it found that the search warrant affidavit established probable cause to search the residence listed in the search warrant application. Viewed in the light most favorable to the government, the facts showed that the detective was approached by an informant who had previously given him reliable information and that the detective corroborated the informant's allegations by arranging two controlled purchases at the house. The controlled purchases confirmed the veracity and reliability of the informant's tip, and the detective also conducted independent research to supplement the information that the informant gave to him. The second controlled purchase preceded the detective's application for a search warrant by less than 48 hours. Thus, the totality of the circumstances certainly suggested a "fair probability" of finding crack cocaine at the house. *Brundidge*, 170 F.3d at 1352.

### 2. The District Court Did Not Err in Denying the Motion to Disclose the Informant's Identity

We review decisions to disclose the identity of confidential informants for abuse of discretion. *Flores*, 572 F.3d at 1265. Knowledge of the identity of a confidential informant is typically privileged. However, where the disclosure of an informant's identity is relevant and helpful to the defense of an accused or is

essential to a fair determination of a cause, the privilege must give way. *Id*. We consider three factors when conducting this inquiry: (1) the extent of the informant's participation in the criminal activity, (2) the directness of the relationship between the defendant's asserted defense and the probable testimony of the informant, and (3) the government's interest in nondisclosure. *Id.* The government's interest may be proven by showing that disclosure might endanger the informant or other investigations. *Id.* The burden is on the defendant to show that the informant's testimony would significantly aid in establishing an asserted defense. *United States v. Gutierrez*, 931 F.2d 1482, 1491 (11th Cir. 1991). Mere conjecture about the possible relevance of the testimony is insufficient to compel disclosure. *Id.*

The district court did not abuse its discretion when it denied Pettaway's motion to require the government to produce the informant's identity. Pettaway neither argues that the informant was involved in the criminal activity nor indicates how the informant's testimony would support his defense. He merely contends that had the district court disclosed the informant's identity, he could have been in a better position to test the veracity and basis of the information that he provided to the detective, which in turn supported the application for a search warrant. This kind of conjecture about the possible relevance of the informant's testimony is insufficient to compel disclosure. *Gutierrez*, 931 F.2d at 1491.

9

### 3. Pettaway Cannot Show, on Plain Error Review, That Facts Contained in the Search Warrant Application Were Stale

Because Pettway did not argue before the district court that the facts supporting the search warrant application were stale, we review this assertion under the plain error standard. *United States v. Andres*, 960 F.3d 1310, 1316 (11th Cir. 2020). To prevail under this standard, Pettaway must show: "(1) an error occurred; (2) the error was plain; (3) it affected his substantial rights; and (4) it seriously affected the fairness of the judicial proceedings. An error is 'plain' if controlling precedent from the Supreme Court or the Eleventh Circuit establishes that an error has occurred." *Id.* (internal quotation marks and citations omitted).

The staleness doctrine requires that the information supporting the government's application for a search warrant show that probable cause exists at the time that the warrant issues. *United States v. Bervaldi*, 226 F.3d 1256, 1264 (11th Cir. 2000). Here, Pettaway has not shown that the district court plainly erred when it denied his motion to suppress based on the timeliness of the information contained in the application for the search warrant. The supporting affidavit and the detective's live testimony both indicate that the application for the search warrant was submitted within 48 hours of the second controlled purchase. Thus, the evidence before the court established probable cause to believe that drugs would be found in the house as of the time that the warrant was issued.

*B. The District Court Properly Denied Pettaway's Motion for Acquittal*

On appeal, Pettaway also argues that the district court committed reversible error when it denied his motion for judgment of acquittal based on the sufficiency of the evidence. The government responds that, when viewed in the light most favorable to the jury's guilty verdicts, the evidence supported Pettaway's convictions on both counts.

We review a challenge to the sufficiency of the "evidence supporting a jury's guilty verdict" *de novo*, but review the trial evidence in the light most favorable to the government. *United States v. Stahlman*, 934 F.3d 1199, 1224 n.12 (11th Cir. 2019) (citing first *United States v. Keen*, 676 F.3d 981, 994 (11th Cir. 2012); and then *United States v. Henderson*, 893 F.3d 1338, 1348 (11th Cir. 2018)). We are required to draw "all reasonable factual inferences in favor of the verdict" and affirm if there is "any reasonable construction of the evidence" that would support the jury's conclusion that the defendant is guilty beyond a reasonable doubt. *Stahlman*, 934 F.3d at 1226 (internal quotation marks and citations omitted).

It is unlawful for any person to knowingly or intentionally "possess with intent to manufacture, distribute, or dispense a controlled substance." 21 U.S.C. § 841(a)(1). To convict a defendant under Section 841(a)(1) the government must prove knowledge, possession, and intent to distribute. *United States v. Poole*, 878 F.2d 1389, 1391 (11th Cir. 1989). All three elements can be proven by direct or

11

circumstantial evidence. *Id*. at 1391–92. Constructive possession is sufficient and "can be established by showing ownership or dominion and control over the drugs or over the premises on which the drugs are concealed." *Id*. Intent to distribute can be proven by showing the quantity of the drug and the existence of things commonly used in connection with its distribution. *Id*.

When viewed in the light most favorable to the government, the evidence sufficiently supports the verdict that Pettaway possessed over 28 grams of crack cocaine with the intent to distribute. The record indicates that Pettaway was the only one to exit the room where police found over 230 grams of crack cocaine and supplies used to re-package the drug for sale. Additionally, the jury heard testimony that the amount of crack cocaine found was consistent with a "higher-level distributor." Moreover, officers found Pettaway's bank card and prescription pill bottles with his name on them in the same room as the drugs. Thus, there was sufficient evidence to prove that Pettaway possessed over 230 grams of crack cocaine with the intent to distribute it.

Likewise, it is unlawful to use a firearm in furtherance of a drug-trafficking crime. 18 U.S.C. § 924(c). Under Section 924(c), we have required that "the prosecution establish that the firearm helped, furthered, promoted, or advanced the drug trafficking." *United States v. Timmons*, 283 F.3d 1246, 1252 (11th Cir. 2002). The mere presence of a firearm "within the defendant's dominion and control during

a drug trafficking offense is not sufficient by itself to sustain a [Section] 924(c) conviction." *Id*. at 1253. The government must show a nexus between the firearm and the drug operation, which can be established by "the type of drug activity that is being conducted, accessibility of the firearm, the type of the weapon, whether the weapon is stolen, the status of the possession (legitimate or illegal), whether the firearm is loaded, proximity to the drugs or drug profits, and the time and circumstances under which the gun is found." *Id*. A defendant's possession of a firearm can be shown by demonstrating that he actually possessed the firearm or that he constructively possessed it, which means he had "ownership, dominion, or control over an object itself or control over the premises in which the object is concealed." *United States v. Villarreal*, 613 F.3d 1344, 1359 (11th Cir. 2010).

When viewed in the light most favorable to the government, the evidence sufficiently supports the verdict that Pettaway knowingly possessed the firearm in furtherance of a drug trafficking crime. The record indicates that Pettaway owned the house and the vehicle parked behind it, the vehicle was registered to the address of that house, and Pettaway's driver's license listed that same address as Pettaway's residence. In addition, Pettaway was the only individual seen exiting the room in the house where the pistol was found. The pistol was found in close proximity to a large amount of crack cocaine, scales, re-packaging materials, cash, a bank card with Pettaway's name on it, and multiple pill bottles displaying Pettaway's name. Thus,

13

there was sufficient evidence from which a reasonable jury could have found that Pettaway possessed the firearm and that the firearm was used in furtherance of a drug-trafficking crime.

### III. CONCLUSION

For the foregoing reasons, the district court is **AFFIRMED.**